**Randolph L. COOK, Plaintiff–Appellant,**

**v.**

**Oprah WINFREY, Defendant–Appellee.**

**No. 97–3403.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 17, 1998.

Decided April 8, 1998.

**324**

Anthony Campanale (argued), Lee S. Perres, Marcus, Perres, Campanale & Weiner, Chicago, IL, Michael Sorokas, Sorokas & Karamanis, Chicago, IL, James A. Karamanis, Marcus, Perres, Campanale & Karamanis, Chicago, IL, for Plaintiff–Appellant.

Steven F. Molo (argued), Winston & Strawn, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, CUDAHY and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

Randolph Cook had a story to tell, and he thought the segment of the press commonly known as supermarket tabloids might be in-

terested in paying him for the rights to that story. For all this Court knows, he may have been right. The story involved a national celebrity, Oprah Winfrey, whose name is far from unfamiliar among readers of the tabloids. What is more, the story was about Winfrey's alleged use of cocaine while involved in a romantic relationship with Cook in 1985. Cook's story thus possessed in abundance the sensational character associated with the tabloid press.

In any event, Cook never cashed in on his tale. Winfrey herself revealed on her nationally syndicated television program in 1995 that she had abused drugs, although she denied ever having been romantically involved with Cook. Cook argues that Winfrey's response to his attempts to sell his story to the tabloids did not stop at confessing to drug abuse on her own program, but also included uttering defamatory comments about him and in the process committing tortious interference with his prospective economic advantage and with his contractual relations with one tabloid, the *National Enquirer*. The same statements by Winfrey, Cook maintains, also amounted to intentional infliction of emotional distress. He initially filed suit in January 1997, then amended his complaint to include four counts of defamation as well as the other torts listed above.

Pursuant to a motion by Winfrey, the district court dismissed the complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Cook filed a motion to vacate the order of dismissal, which the district court treated as a motion to reconsider under Rule 60(b). The court denied that motion on August 22, 1997. Cook filed a timely notice of appeal, and for the reasons stated below this Court affirms in part and reverses in part, remanding some of Cook's claims for further proceedings.

## I. SUBJECT MATTER JURISDICTION

■ Winfrey filed her motion to dismiss the amended complaint, along with a supporting memorandum, on May 15, 1997. The motion's first sentence asked the court to dismiss the amended complaint "pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)" (Pl.17 at 1).[1] That is, Winfrey requested dismissal both because the court lacked subject matter jurisdiction over at least some of the claims and because at least some of the counts failed to state claims upon which relief could be granted.

Winfrey's supporting memorandum focused upon the grounds for dismissal under Rule 12(b)(6), but a footnote at the outset of the "Argument" section advanced grounds for dismissing the entire amended complaint pursuant to Rule 12(b)(1) as well (Pl. 18 at 3 n. 2). In essence, Winfrey argued that Cook had not alleged a sufficient amount in controversy to invoke the federal court's diversity jurisdiction. Correctly noting that the diversity statute was amended in 1996 to require that the amount in controversy exceed $75,000, see 28 U.S.C. § 1332(a), Winfrey pointed out that the amended complaint alleged only that the amount in controversy exceeded $50,000 (which was the minimum amount in controversy required prior to the 1996 amendment).

■ When it granted Winfrey's motion to dismiss the action, however, the district court resolved only the Rule 12(b)(6) issues, ignoring the jurisdictional challenge asserted under Rule 12(b)(1). Indeed, neither party saw fit to mention the jurisdiction issue in its briefs to this Court; the matter came to our attention quite accidentally during oral argument. It is axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action. "The requirement that jurisdiction be established

as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Environment,* —— U.S. ——, ——, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (quoting *Mansfield C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462). This Court has elaborated that "once the district judge has reason to believe that there is a serious jurisdictional issue, he is obliged to resolve it before proceeding to the merits even if the defendant, whether as a matter of indolence or strategy, does not press the issue." *Crawford v. United States,* 796 F.2d 924, 929 (7th Cir.1986). Moreover, "decisions that fail to remark a jurisdictional issue are not assumed to have resolved it by their silence." *Id.* at 928. It is therefore clear that the district court in this case erred in not resolving Winfrey's challenge to the jurisdictional amount, even if Winfrey herself did not press this ground as her preferred method of resolving the case.[2]

■ If the challenge to the amount in controversy were one that turned upon factual questions concerning how much Cook could hope to recover by his suit, we would have no choice but to remand the case to the district court so that it could resolve the matter. In this case, however, Winfrey's challenge is limited to the allegations of the amended complaint and is fully capable of resolution as a matter of law.[3] As noted above, Winfrey's challenge to Cook's allegations supporting diversity jurisdiction turns upon the fact that Congress in 1996 increased the minimum amount in controversy, declaring that diversity suits must involve

---

1. The record in this case includes a single volume of pleadings, the entries in which are numbered according to the district court's docket sheet. This opinion refers to the pleadings as "Pl." followed by the entry number and a page and/or paragraph citation.

2. Winfrey's memorandum supporting her motion to dismiss urged "that any dismissal order go beyond this [jurisdictional] ground and include the other [Rule 12(b)(6)] grounds set forth herein" (Pl. 18 at 3 n. 2). The idea that the court could resolve the issue of subject matter jurisdiction in Winfrey's favor and then proceed to address the Rule 12(b)(6) grounds fundamentally misunderstands the nature of federal jurisdiction.

If the court were without jurisdiction over the subject matter, its only proper course would have been to note the absence of jurisdiction and dismiss the case on that ground. See *Steel Co.,* —— U.S. at ——, 118 S.Ct. at 1012 (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264).

3. If Winfrey does harbor any objections to diversity jurisdiction based on the amount Cook would actually stand to recover if he won, she would of course be free to raise those objections to the district court on remand (or at any other time during the progress of the case). See Fed. R. Civ. P. 12(h)(3).

more than $75,000 where previously the amount had been $50,000. Because Cook's amended complaint alleged only that the amount in controversy exceeded $50,000, Winfrey argues, the district court lacked diversity jurisdiction over the suit.

This argument is mistaken for two independently sufficient reasons, one simple and the other more intricate. The simple reason is that the amended complaint repeatedly prays for damages of $20 million (see Pl. 16 at 3, 4, 5, 8, 9, 11). In the absence of a factual challenge to Cook's potential to recover more than the jurisdictional minimum, any technical defect in reciting the $50,000 minimum in the allegation of jurisdiction was overcome by the clear allegations elsewhere in the complaint that the case involved a sum well in excess of the $75,000 minimum. See *Loss v. Blankenship*, 673 F.2d 942, 950 (7th Cir.1982) ("Imperfections in pleading style will not divest a federal court of jurisdiction where the complaint as a whole reveals a proper basis for jurisdiction.").

■ The more complex reason why Winfrey's halfhearted argument concerning jurisdiction is incorrect concerns timing. The increase in the jurisdictional amount was signed into law on October 19, 1996 and provided that its effective date would be ninety days from its enactment, see Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 205(b), meaning that the change took effect on January 17, 1997. Cook's initial complaint in this case was filed with the district court one day earlier, on January 16. The action commenced, therefore, when the $50,000 jurisdictional minimum was still the law of the land. It is well settled that subject matter jurisdiction is to be determined as of the time when jurisdiction is invoked; later developments such as a decrease in the amount recoverable do not remove federal jurisdiction once it has been established. See, e.g., *Grinnell Mut. Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir.1997).

Although authority is scarce on the question whether this rule holds when the change is not to the facts supporting jurisdiction but rather to the jurisdictional statute itself, it stands to reason that it should. Given the existence of statutes of limitations, a substan-

tial injustice would result in many cases if a change in the jurisdictional amount were suddenly to divest federal courts of jurisdiction over actions in which jurisdiction was entirely proper when they were filed. Nor should the fact that Cook filed an amended complaint on April 26, 1997 (that is, after the increase to $75,000 took effect) operate to divest the district court of jurisdiction. The amended complaint, it is true, gave Cook an opportunity to allege explicitly that the higher amount was in controversy, but it did not obligate him to do so. Diversity jurisdiction was properly alleged at the outset of the action and therefore remained proper throughout. This Court may proceed to review the merits of the Rule 12(b)(6) dismissal, despite the district court's unfortunate failure to address the challenge to its jurisdiction.

## II. RULE 60(b) RULING

■ Before attacking the merits of the district court's decision to dismiss his claims, Cook raises a procedural quarrel. When the district court granted Winfrey's motion to dismiss, Cook had not filed a response; the court noted as much in its memorandum opinion of July 9, 1997. As stated previously, Cook filed a motion to vacate the dismissal order, claiming that his failure to file a response was excusable neglect. The district court granted Cook leave to file his response brief late, but on the same day resolved the motion to vacate as if it had been a motion to reconsider pursuant to Federal Rule of Civil Procedure 60(b). Cook now complains that the district court failed to consider the arguments raised in his response brief when it denied his motion.

The charge is quite simply not true. In its August 21, 1997 memorandum opinion denying the motion to reconsider, the district court states, "Even if we were to examine the arguments contained in Cook's response, we find that we would have come to the same conclusions about his complaint and would have dismissed it at any rate" (Aug. 21, 1997 Op. at 6). The court then went on to discuss briefly one of the arguments Cook raised in his belated response brief.

In short, the court indulged Cook's tardiness to a greater extent than was strictly necessary. It was under no obligation to accept the late response at all, see Fed. R.Civ.P. 6(b) (allowing court discretion to enlarge time on basis of excusable neglect), and it certainly was not required to delay its decision further to give more extensive consideration to arguments it believed to be without merit. The court did not err in its handling of Cook's motion to vacate and his response brief.

## III. DISMISSAL FOR FAILURE TO STATE A CLAIM

Federal Rule of Civil Procedure 12(b)(6) allows a party to assert as a defense to any claim for relief the "failure to state a claim upon which relief can be granted." Rule 8(a), meanwhile, requires that a claim for relief need contain, in addition to a statement concerning jurisdiction and a demand for judgment, only "a short and plain statement of the claim showing that the pleader is entitled to relief." It is well settled that Rule 12(b)(6) will be invoked to dismiss a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80); *Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir.1997). This standard gives effect to the liberal notice pleading philosophy that underlies the Federal Rules of Civil Procedure, as opposed to the more demanding fact pleading systems in place in many other jurisdictions. The district court used Rule 12(b)(6) to dismiss all seven counts of Cook's amended complaint. For the reasons that follow, this Court holds that only three of those counts were properly dismissed.

## A. THE TORTIOUS INTERFERENCE CLAIMS

If one bears the *Hishon* standard firmly in mind, it is clear that the district judge in the present case misapplied Rule 12(b)(6) as to some of Cook's claims. On the claim of tortious interference with contract,

for instance, the judge held that Cook had not stated facts in his complaint that demonstrated an actual contract with the *National Enquirer*. Under the system of notice pleading, however, all Cook was required to do was provide "a short and plain statement showing that [he] is entitled to relief." Under Illinois law, the elements of tortious interference with contract are: that Cook had a valid contractual relationship with some other party, that Winfrey was aware of that contract, that she intentionally or unjustifiably induced the other party to breach, that the other party in fact breached as a result of Winfrey's actions, and that the breach caused Cook damages. See *Williams v. Shell Oil Co.*, 18 F.3d 396, 402 (7th Cir.1994) (citing *Lusher v. Becker Bros., Inc.*, 155 Ill.App.3d 866, 108 Ill.Dec. 748, 509 N.E.2d 444, 445 (1987)). Count VI of Cook's amended complaint alleges all of these elements (see Pl. 16 at 8, ¶¶ 45–50), making it perfectly clear that he might be able to prove a set of facts consistent with the complaint that would entitle him to relief, see *Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232–33. Winfrey may well be able to disprove some or all of the allegations, but that would require resolution of factual disputes beyond the pleadings; the claim therefore should not have been dismissed under Rule 12(b)(6).

Much the same is true of Cook's claim for tortious interference with prospective economic advantage, advanced in Count V of the amended complaint. The district court correctly stated the elements of the tort: that Cook had a reasonable expectation of entering into a valid business relationship, that Winfrey knew of this expectancy, that she purposefully interfered to prevent the expectancy from being fulfilled, and that damages to Cook resulted from the interference. See *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 170–71 (7th Cir.1993) (citing *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870, 878 (1991)). Cook's amended complaint alleges each of these elements (see Pl. 16 at 6–7, ¶¶ 34–38, 41–43).

The district court dismissed this count because it read Illinois court decisions as requiring that the plaintiff allege both "a busi-

ness expectancy with a specific third party" and "action by the interfering party directed towards the party with whom the plaintiff expects to do business." *Schuler v. Abbott Laboratories,* 265 Ill.App.3d 991, 203 Ill.Dec. 105, 639 N.E.2d 144, 147 (1993). Because Cook did not name any particular third party with whom he had a reasonable expectation of a business relationship, or toward whom Winfrey directed her interfering actions, the court concluded that the complaint was inadequate.

Cook responds to this dismissal by identifying Illinois cases holding that the plaintiff may point to an identifiable "class" of third parties with whom he had a business expectancy (and toward whom the defendant directed her interfering actions), rather than a single third party. See, e.g., *River Park, Inc. v. City of Highland Park,* 281 Ill.App.3d 154, 217 Ill.Dec. 410, 667 N.E.2d 499, 507 (1996) (holding that a plaintiff must "allege either an interference with specific third parties or an identifiable class of third persons"); *Parkway Bank & Trust Co. v. City of Darien,* 43 Ill.App.3d 400, 2 Ill.Dec. 234, 237–38, 357 N.E.2d 211, 214–15 (1976). Cook then argues that his amended complaint has implicitly·identified "the media" as the class of third persons with whom he had a legitimate business expectancy, and therefore that the complaint is sufficient. Winfrey, not surprisingly, responds with the argument that "the media" is far too· broad and ill-defined a concept to qualify as "an identifiable class."

But this entire argument strays rather far afield from the minimal requirements of federal notice pleading. Having alleged that Winfrey improperly interfered with his "ability to enter into contracts or business relationships with third parties interested in purchasing the rights to publication of his experiences" (Pl. 16 at 6–7, para. 38), Cook is under no obligation to plead further the facts that he believes support his claim. As an illustration of the concept, one of the forms included in ·the appendix to the Federal Rules of Civil Procedure states a claim for money owed for a sale of goods. The substantive allegation states, in its entirety, "Defendant owes plaintiff ___ dollars for goods sold and delivered by plaintiff to de-

fendant between June 1, 1936 and December 1, 1936." Fed.R.Civ.P. app., Form 5. The plaintiff using this form need not state in the complaint what the goods were, their quantity, where they were delivered, or on what date within the stated six month period the delivery took place. Presumably, if any of these·unstated facts are actually unknown to the defendant, he would be entitled to proceed either by a motion for a more definite statement, see Fed.R.Civ.P. 12(e), or through the discovery devices made available in Rules 26 through 36.

Viewed in this light, Cook's complaint is adequate. The Federal Rules do not require that his complaint allege the specific third party or class of third parties with whom he claims to have had a valid business expectancy. He has alleged that such an expectancy existed and that Winfrey purposely interfered with it. Consistent with those allegations, he might be able to prove a set of facts (including the identity of the parties or class of parties) that would entitle him to relief. See *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232–33. If the identity of the third party or parties allegedly involved was not clear to Winfrey, she was free either to file a Rule 12(e) motion stating that the omitted information made it impossible for her to draft a properly responsive pleading or to wait until discovery to seek that information. A Rule 12(b)(6) motion cannot be used to dismiss a complaint on the ground that it does not include information that Rule 8 does not require it to contain.

## B. THE DEFAMATION CLAIMS

Cook's amended complaint includes two counts of defamation *per se* (Counts I and II) and two counts of defamation *per quod* (Counts III and IV). The district court dismissed the first count of each type (Counts I and III) (Pl. 16 at 2–3; 5) on statute of limitations grounds. Because Cook did not raise or argue the propriety of these dismissals on appeal, the matter is waived, and this Court affirms the district court as to these counts.

As to the second claim of each type (Counts II and IV) (Pl. 16 at 3–4; 5–6), the district court first resolved a choice of law

dispute in favor of applying Ohio law, then dismissed the claims. The court dismissed the defamation *per se* count because the utterances alleged did not, as a matter of law, amount to defamation *per se* under controlling Ohio decisions. It dismissed the claim of defamation *per quod* on the ground that the utterances alleged were expressions of opinion and therefore protected by an absolute privilege. This Court affirms the choice of law ruling but reverses the decision to dismiss each count, because the district court again departed from the limited analysis appropriate on a motion to dismiss under Rule 12(b)(6).

### 1. Choice of Law

The parties suggest only two possible answers to the choice of law question presented: either Ohio law or Illinois law should control the defamation claims. Winfrey contends that Ohio law is the proper choice, because that state was the domicile of the alleged victim (Cook) at the time the defamatory statements are claimed to have been uttered. Cook, on the other hand, argues that Illinois law should apply because the bulk of the harm that he suffered as a result of the (alleged) statements took place in Illinois.

A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477; *Birchler v. Gehl Co.*, 88 F.3d 518, 520 (7th Cir.1996). This Court held in 1994 that in multistate defamation cases, Illinois cases indicate that "the applicable law is that of the victim's domicile, period." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 916 (7th Cir.1994), certiorari denied, 514 U.S. 1111, 115 S.Ct. 1964, 131 L.Ed.2d 855. Although Cook goes to great lengths to convince us that the rule identified in *Rice* is too sweeping and that Illinois law leaves room for the rare case in which the greater harm accrues to the victim in a state other than the one where he or she is domi-

ciled, we see nothing in the Illinois cases to convince us that *Rice* was incorrect. This Court therefore affirms the district court's use of Ohio law to evaluate both of Cook's defamation claims.

### 2. Defamation per se

"Slander *per se* means that the slander is accomplished by the very words spoken," whereas "[s]lander *per quod* ... means that the slander results from the listener's interpretation of the words through innuendo." *King v. Bogner*, 88 Ohio App.3d 564, 624 N.E.2d 364, 366 (1993) (citations omitted). Count II of Cook's amended complaint alleges that he suffered slander per se when Winfrey stated (or at least was quoted in the *National Enquirer* as having stated), "I will fight this suit until I am bankrupt before I give even a penny to this liar [Cook]," and "It's [this lawsuit] all a pack of lies" (see Pl. 16 at 4, ¶¶ 21–22). The district court compared these alleged statements with Ohio's definition of slander *per se* and found as a matter of law that Winfrey did not commit that tort.

In order for a remark to be slander *per se* in Ohio, "it must consist of words that import an indictable criminal offense involving moral turpitude or infamous punishment, impute some loathsome or contagious disease that excludes one from society[,] or tend to injure one in one's trade or occupation." *King*, 624 N.E.2d at 366 (citations omitted). The district court was certainly correct in concluding that Winfrey's alleged statements implied neither a criminal offense involving moral turpitude or infamous punishment nor any kind of disease. Its conclusion that the statements also did not tend to injure Cook in his trade or occupation, however, necessarily resolved factual issues beyond the scope of the pleadings. The amended complaint does not even disclose what Cook's profession is, though we are told in the briefs that he is a real estate broker.[4] It was error to conclude at this early stage that Winfrey's

---

**4.** It presumably was open to the district court to consider this information by treating the motion to dismiss under Rule 12(b)(6) as a motion for summary judgment under Rule 56. See Fed. R.Civ.P. 12(b) (allowing court to consider "mat-

ters outside the pleading" by treating motion as one for summary judgment and allowing all parties "reasonable opportunity to present all material made pertinent to such a motion by Rule 56").

alleged statements could not have been of a type that would "tend to injure [Cook] in [his] trade or occupation." We therefore reverse the dismissal of Count II.

### 3. Defamation per quod

 The district court dismissed Count IV of the amended complaint—alleging defamation *per quod* from the same statements involved in the defamation *per se* claim—on the ground that the statements were expressions of opinion and therefore entitled to absolute privilege. Although it is certainly correct that the Ohio constitution affords an absolute privilege to expressions of opinion, see Ohio Const. § 11, art. I; *Vail v. The Plain Dealer Publ'g Co.,* 72 Ohio St.3d 279, 649 N.E.2d 182, 183 (1995), certiorari denied, 516 U.S. 1043, 116 S.Ct. 700, 133 L.Ed.2d 657, the conclusion that the privilege applied to the allegedly defamatory statements in this case required the district court to resolve factual issues that should not be reached on a motion to dismiss under Rule 12(b)(6).

The Ohio Supreme Court has held that a court assessing whether speech is protected opinion "must consider the totality of the circumstances." *Vail,* 649 N.E.2d at 183. More specifically, the court should examine "the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared." *Id.* (citing *Scott v. News–Herald,* 25 Ohio St.3d 243, 496 N.E.2d 699 (1986)); see also *Ohio Savings Ass'n v. Business First of Columbus, Inc.,* 43 Ohio App.3d 215, 540 N.E.2d 320, 324 (1988). Bearing these factors in mind, it is not possible to say as a matter of law that Cook could prove no set of facts consistent with the amended complaint that would remove the alleged statements from the realm of protected opinion. In addition, Cook points to one Ohio opinion that observes that the statement "In my opinion Jones is a liar" is really a factual assertion masked as opinion, and is therefore not privileged. *North Coast Cable Ltd. Partnership v. Hanneman,* 98 Ohio App.3d 434, 648 N.E.2d 875, 879–80 (1994). This is enough to reinforce the point that determining whether or not Winfrey's alleged statements were, in all the circumstances, opinions or assertions of fact requires an inquiry that goes beyond the allegations of the complaint into a consideration of the context in which the statements were uttered. It was therefore error for the district court to grant Winfrey's motion to dismiss with regard to Count IV, and we reverse.

## C. THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

 The district court dismissed Cook's claim of intentional infliction of emotional distress—Count VII[5] of the amended complaint—on two grounds: first, because Winfrey's alleged conduct was not "extreme and outrageous" under Illinois law (which the parties agree controls the claim); and second, because Cook failed to allege that he suffered severe emotional distress. This Court agrees with the first ground and therefore affirms the district court's holding. We do not, however, base our holding on the district court's second stated ground for dismissal; that ground necessarily looks beyond the bare sufficiency of the complaint, which is not permissible in the context of a Rule 12(b)(6) motion.

 In order to state a cause of action for intentional infliction of emotional distress under Illinois law, a plaintiff must allege that "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; [and] (3) the defendant's conduct in fact caused severe emotional distress." *Doe v. Calumet City,* 161 Ill.2d 374, 204 Ill.Dec. 274, 641 N.E.2d 498, 506 (1994). To deal briefly with the district court's second ground for dismissing this claim, which concerns the third element listed in the *Calumet City* case, Cook's amended complaint states that Winfrey's

---

5. The amended complaint mistakenly numbers both the tortious interference with contract and the intentional infliction of emotional distress claims as "Count VI" (Pl. 16 at 8–9). This Court will refer to the latter claim as Count VII to avoid confusion.

"words and deeds did in fact inflict severe emotional distress in [sic] Cook" (Pl. 16 at 10, ¶ 65). A separate paragraph of the complaint details some symptoms of the distress that Cook claims to have suffered: "great anxiety, nervousness, humiliation, fright, sleeplessness, nausea and apprehension" (Pl. 16 at 9, ¶ 56). The district court concluded that these symptoms are not, as Illinois requires actionable emotional distress to be, "so severe that no reasonable man could be expected to endure [them]." *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765, 767 (1976) (quoting Restatement (Second) of Torts, § 46 cmt. j (1965)).

This conclusion is not permissible on a Rule 12(b)(6) motion. Even assuming that Cook would be limited at trial to proving the specific symptoms enumerated in the amended complaint, it is possible that he might show those symptoms to have been so intolerable that they satisfy the Illinois definition of severe emotional distress. The term "sleeplessness," for example, might refer to an entire range of difficulties from mild insomnia to a condition that gravely threatens physical and psychological health. The word "fright," similarly, might denote anything from a mild case of the jitters to chronic, debilitating terror. Whether Cook actually suffered from versions of any of these symptoms serious enough to amount to severe emotional distress is a factual question that is not appropriately resolved on a motion to dismiss the complaint.

The district court's other ground for dismissing Count VII, however, is sufficient to accomplish the task. The allegations of the amended complaint purport to set forth all of the statements and other conduct by Winfrey that damaged Cook. Count VII specifically states that it is based upon "[s]uch conduct noted above"—i.e., noted in the previous counts of the complaint (Pl. 16 at 9, ¶ 53; see also para. 54). Under the federal system of notice pleading, Cook may not have been obliged to allege every action that he claimed inflicted emotional distress. Having done so, however, and having intimated that the conduct alleged constituted the full extent of the tortious activity, Cook cannot now complain that he is being held to an inappropriate fact

pleading standard. The district court was therefore justified in testing the conduct alleged against the Illinois standard for intentional infliction of emotional distress.

The court's conclusion that Winfrey's alleged conduct was not "extreme and outrageous" is likewise correct. Under Illinois law, "[l]iability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency." *Public Finance*, 4 Ill.Dec. 652, 360 N.E.2d at 767. It is not sufficient "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.* "Mere insults, indignities, threats, annoyances, petty oppressions or trivialities" are not actionable as intentional infliction of emotional distress. *Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir.1997) (quoting *McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806, 809 (1988)).

As the district court correctly summarized, Winfrey's alleged actions were that she called Cook "a liar" who was not to be trusted or believed, stated that he would be very sorry if he told his story to anyone else, and denied that she had any prior relationship with him (Pl. 16 at 2–3, ¶ 13); that she stated, "I will fight this suit until I am bankrupt before I give even a penny to this liar [Cook]" (Pl. 16 at 4, ¶ 21); that she stated that this lawsuit was "all a pack of lies" (Pl. 16 at 4, ¶ 22); and that she stated that she has done "what is proper to stop him [Cook] from spreading his lies" (Pl. 16 at 6, ¶ 37).

Each action Winfrey is alleged to have taken, in other words, amounts to uttering a defamatory statement. A number of Illinois courts have dismissed claims of intentional infliction of emotional distress based upon defamation, on the ground that the conduct was not "extreme and outrageous." See *Layne v. Builders Plumbing Supply Co.*, 210 Ill.App.3d 966, 155 Ill.Dec. 493, 569 N.E.2d 1104, 1109 (1991); *Berkos v. National Broad-*

*casting Co.,* 161 Ill.App.3d 476, 113 Ill.Dec. 683, 515 N.E.2d 668, 680 (1987); *Buechele v. St. Mary's Hosp. Decatur,* 156 Ill.App.3d 637, 109 Ill.Dec. 83, 509 N.E.2d 744, 746 (1987). Cook's reply brief to this Court makes no attempt to respond to these cases and offers no other Illinois cases in which defamatory comments have been allowed to support a claim of intentional infliction of emotional distress. We hold, therefore, that the district court was correct in dismissing this claim under Rule 12(b)(6).

## CONCLUSION

Although the district court erred in not addressing Winfrey's challenge to its subject matter jurisdiction before proceeding to the merits, this Court concludes that diversity jurisdiction was proper in this case. This Court affirms the dismissal of Counts I and III on statute of limitations grounds and the dismissal of Count VII for failure to state a claim for intentional infliction of emotional distress under Illinois law. Because the district court improperly resolved factual issues beyond the scope of the pleadings, we reverse the dismissal of Counts II, IV, V, and VI, in which Cook alleges, respectively, defamation *per se* based on statements published in 1997, defamation *per quod* based on those same statements, tortious interference with prospective economic advantage, and tortious interference with contract. We express no view, of course, on the question whether Cook's allegations will survive the evidence-based scrutiny that is appropriate on a motion for summary judgment. On remand, the case shall be assigned to a different judge pursuant to Circuit Rule 36. Each party shall bear its own costs on this appeal.

AFFIRMED in part, REVERSED and REMANDED in part.