John A. ACKERMAN, et al.,
Plaintiffs–Appellants,

v.

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, et al.,
Defendants–Appellees.

No. 98–3361.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 16, 1999.

Decided March 25, 1999.

Robert John, Robert John & Associates, Evansville, IN, Rand P. Nolen (argued), Fleming, Hovenkamp & Grayson, Houston, TX, for Plaintiffs–Appellants.

Maurice J. McSweeney (argued), Foley & Lardner, Milwaukee, WI, George E. Purdy, Bose, McKinney & Evans, Indianapolis, IN, Ross E. Rudolph, Mattingly, Rudolph, Fine & Porter, Evansville, IN, Paul F. Heaton, Northwestern Mutual Life Insurance Company, Milwaukee, WI, for Defendants–Appellee except Indiana Dept. of Ins.

Dennis E. Bland, Indiana Department of Insurance, Indianapolis, IN, for Defendant–Appellee Indiana Department of Insurance.

Before POSNER, Chief Judge, and FLAUM and ROVNER, Circuit Judges.

POSNER, Chief Judge.

Several *hundred* policyholders of the Northwestern Mutual Life Insurance Company brought this diversity suit against the company and several of its officers for common law fraud and related torts. The district judge dismissed the fraud claim for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure, which requires that fraud claims be pleaded with particularity, and having done so he dismissed the entire suit with prejudice. The plaintiffs appeal from the dismissal of the suit, from an order entered at the same time refusing to allow them to file an amended complaint adding Northwestern's insurance agents as additional defendants, and from an order entered two months later awarding the defendants $128,000 in court costs. We have no jurisdiction over the appeal from the last order, because the plaintiffs did not file a notice of appeal from it. The notice of appeal from the order dismissing their suit could not bring up an order entered later, Fed. R.App. P. 4(a)(1); *York Center*

*Park District v. Krilich,* 40 F.3d 205, 207 (7th Cir.1994); *Wielgos v. Commonwealth Edison Co.,* 892 F.2d 509, 511 (7th Cir. 1989); *LaChance v. Duffy's Draft House, Inc.,* 146 F.3d 832, 836–38 (11th Cir.1998), and did not even purport to.

The plaintiffs allege that Northwestern's insurance agents persuaded them to use the cash values of their existing policies to pay premiums for new, larger policies, without telling them that by doing this the policyholder would be reducing the value of his existing policy, that part of the cash value would actually go to the agent as a commission rather than pay the first-year premium of the new policy, and that the cash value would quickly be exhausted, after which the policyholder would find himself having to pay large premiums to keep the new policy in force. There is more to the alleged scheme, but this is the essence and is all that need be set forth to frame the issues for decision.

In order to make a complaint with hundreds of plaintiffs manageable, the plaintiffs' lawyers grouped their clients according to the particular insurance agent with whom each dealt. The complaint does not, however, give the dates on which any of the fraudulent representations or omissions were made, although it does indicate that they were made around the time that the policies were issued to the specified plaintiffs. Neither does the complaint reveal what exactly each agent said to each plaintiff; it merely gives the gist of the agents' spiel in approximately the terms in which we have summarized the alleged scheme. The lawyers admit that they did not talk to all their clients before drafting the complaint.

■ The purpose of requiring that fraud be pleaded with particularity is not, as it might seem and the cases still sometimes say, e.g., *Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 777–78 (7th Cir.1994) (which refers, however, to the skeptical literature, *id.* at 777 n. 4), to give the defendant in such a case enough information to prepare his defense. A charge of fraud is no more opaque than any other charge. The defendant can get all the information he needs to meet it by filing a contention interrogatory. See Fed.R.Civ.P. 33(c); *Vidimos, Inc. v. Laser Lab Ltd.,* 99 F.3d 217, 222 (7th Cir.1996); *Taylor v. FDIC,* 132 F.3d 753, 762 (D.C.Cir.1997); *Shushany v. Allwaste, Inc.,* 992 F.2d 517, 519 (5th Cir.1993). The purpose (the defensible purpose, anyway) of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint.

■ Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual), *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992); *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1418 (3d Cir.1997); *Norman v. Apache Corp.,* 19 F.3d 1017, 1022 (5th Cir.1994); *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972); cf. *Addington v. Texas,* 441 U.S. 418, 424, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); because fraud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it, cf. *Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978) (Friendly, J.) ("fraud by hindsight"); *Katz v. Household Int'l, Inc.,* 91 F.3d 1036, 1039 (7th Cir. 1996); *DiLeo v. Ernst & Young,* 901 F.2d 624, 628 (7th Cir.1990); and because charges of fraud (and also mistake, the other charge that Rule 9(b) requires be pleaded with particularity) frequently ask courts in effect to rewrite the parties' contract or otherwise disrupt established relationships. See, e.g., *Stearns v. Page,* 48 U.S. (7 How.) 819, 828–30, 12 L.Ed. 928 (1849). By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extor-

tionate. Similar reasons explain why fraud plaintiffs are frequently required to prove their case by clear and convincing evidence rather than the usual mere preponderance, *Addington v. Texas, supra,* 441 U.S. at 424, 99 S.Ct. 1804; *AM Int'l v. Graphic Management, Inc.,* 44 F.3d 572, 576 (7th Cir.1995), but it is important to note that the heightened pleading and heightened proof requirements do not move in lockstep with each other. Rule 9(b) requires heightened pleading of fraud claims in all civil cases brought in the federal courts, whether or not the applicable state or federal law requires a higher standard of proving fraud, which sometimes it does and sometimes it does not. See, e.g., *Herman & McLean v. Huddleston,* 459 U.S. 375, 387–89, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).

■ Almost two years into this suit, when the district judge threw out the fraud claim on 9(b) grounds, the plaintiffs' lawyers still had not completed the required investigation. They hadn't even talked to all their clients. It cannot be assumed that the agents' spiel was fraudulent in every instance in which it was given. The use of cash values to finance a new policy is not on its face a fraudulent practice. Suppose a person has a $100,000 life insurance policy from Northwestern Mutual and would like another $100,000 policy; and suppose the annual premium for the new policy is $300 and the cash value of the existing policy is $2,100. It is not obviously a mistake for the policyholder to apply the $2,100 to the payment of premiums for the new policy, thereby saving $300 a year for the first seven years of that policy. More than a description of such an offer is necessary to show that it is fraudulent, but that is all the complaint contains. See, e.g., *Schiffels v. Kemper Financial Services, Inc.,* 978 F.2d 344, 352–53 (7th Cir.1992); *Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923–24 (7th Cir.1992); *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990); *Shushany v. Allwaste, Inc., supra,* 992 F.2d at 521–22.

Had the plaintiffs' lawyers interviewed all their clients, they could have obtained not only a description of the representations or omissions that worked a fraud on the particular client but also the approximate date of the fraud, since the date the policy was issued to the particular client would appear on the copy of the policy in the client's possession. On the importance to compliance with Rule 9(b) of the "when," see, e.g., *Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1328 (7th Cir.1994); *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir.1992); *Billard v. Rockwell Int'l Corp.,* 683 F.2d 51, 57 (2d Cir.1982).

Of course with hundreds of clients, compliance with Rule 9(b) is burdensome. But you cannot get around the requirements of the rule just by joining a lot of separate cases into one. *Brown v. North Central F.S., Inc.,* 173 F.R.D. 658, 665–70 (N.D.Iowa 1997); cf. *Jepson, Inc. v. Makita Corp., supra,* 34 F.3d at 1329; *Vicom, Inc. v. Harbridge Merchant Services, Inc., supra,* 20 F.3d at 778. You may be able to do so by filing a class suit, which the plaintiffs' lawyers failed to do. Now that it is acknowledged that tort claims can be litigated as class suits, e.g., *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 784 (3d Cir.1995), even though there are bound to be differences (if only in damages) among the claimants, a tension has arisen between Rule 9(b) and Rule 23, in class suits that charge fraud. If Rule 9(b) is applied to every member of a class of fraud victims, the practical effect is to turn the class suit into the sort of unwieldy multiple-plaintiff suit that we have here. But if, in recognition of this problem, Rule 9(b) is applied only to the named plaintiff or plaintiffs, the defendant will be faced with fraud charges the bulk of which have not received the kind of searching precomplaint investigation that the rule requires. The dilemma is resolved in securities cases in favor of the class action, *Basic Inc. v. Levinson,* 485

U.S. 224, 229–30, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), but these tend to be cases in which the alleged misrepresentation or omission is uniform across all members of the class. Where, as in this case, the fraud involves different statements to different customers with whom the defendant's agents dealt individually, the class action device is more questionable. *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998); *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir.1998); cf. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1084–85 (6th Cir.1996). But we need not decide whether this suit could have been brought as a class suit. It was not, and this means that Rule 9(b) applied in full force; and it was not complied with.

The rule was violated for the further reason that the defendants are not the insurance agents; they are Northwestern Mutual Life Insurance Company and its officers. It is they who are charged with fraud. The plaintiffs were required to specify which *defendants* said what to whom and when, unless they could show, which they did not attempt to do, that the requisite information was "within the defendant's exclusive knowledge." *Jepson, Inc. v. Makita Corp., supra*, 34 F.3d at 1328. Although the complaint alleges in general terms that the defendants inspired, encouraged, and condoned the agents' sales pitch that is alleged to be misleading, it neither associates a particular defendant with a particular set of statements (oral or written) to the agents nor specifies the contents of those statements.

■ This problem is least severe with respect to the insurance company. When an agent who is authorized to make a contract on his principal's behalf (and the principal needn't be the agent's employer and was not here) uses fraud to induce the contract, the principal is liable even if the agent is acting solely to feather his own nest. This is the doctrine of *Gleason v. Seaboard Air Line Ry.*, 278 U.S. 349, 49 S.Ct. 161, 73 L.Ed. 415 (1929); see also *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566–68, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982); *Hartmann v. Prudential Ins. Co.*, 9 F.3d 1207, 1211 (7th Cir.1993); *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961, 965 (6th Cir.1998); *Citibank, N.A. v. Nyland (CF8) Ltd.*, 878 F.2d 620, 624 (2d Cir.1989). In such a case the principal's liability is derivative from the agent's fraud, and there is no need to allege a fraudulent representation by the principal. The plaintiffs in our case, however, neither cite *Gleason* nor refer to the doctrine, and so this point is waived. *Hartmann v. Prudential Ins. Co., supra*, 9 F.3d at 1211–12. Even without *Gleason*, the insurance company would be derivatively liable because the agents were acting in part at least to enrich the company as well as themselves. *J.D. Edwards & Co. v. Podany*, 168 F.3d 1020 (7th Cir. 1998); *Lyons v. Brown*, 158 F.3d 605, 609–10 (1st Cir.1998); *AT & T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1438 (3d Cir.1994). That would make it a standard respondeat superior case. But the plaintiffs do not argue this either.

■ Had the plaintiffs' lawyers known about *Gleason* or appreciated the scope of the doctrine of respondeat superior, they would not have argued, in their futile effort to join the insurance agents as additional defendants, that the agents were necessary or indispensable parties. They would have realized that they could get complete relief from the agents' principal, Northwestern. In any event their effort to add parties came too late. The addition would have destroyed complete diversity, requiring the dismissal of the suit after two years and entitling the plaintiffs to start over in state court. The prolongation of the litigation that such a course would have entailed was a compelling reason for the judge to deny the motion to amend. See *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Midwest Grinding Co. v. Spitz, supra*, 976 F.2d 1016 at 1021; *Acosta–Metre v. Hilton Int'l*

*of Puerto Rico, Inc.*, 156 F.3d 49, 51–52 (1st Cir.1998); *Denny v. Barber, supra,* 576 F.2d at 471.

AFFIRMED.