In re Richard Myung PARK, Debtor.

Mannheim Automotive Financial Services, Inc.; and Mannheim Services Corp., d/b/a Greater Chicago Auto Auction, Plaintiffs,

v.

Richard Myung Park, Defendant.

Bankruptcy No. 04 B 2337.
Adversary No. 04 A 2630.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 13, 2004.

Daniel P. Dawson, Jessica R. Falk, Nisen & Elliott, LLC, Chicago, IL, for Mannheim Financial and Mannheim Services.

Eugene Crane, Arthur G. Simon, Crane, Heyman, Simon, Welch & Clar, Chicago, IL, for Debtor Richard Myung Park.

## MEMORANDUM OPINION AND ORDER

A. BENJAMIN GOLDGAR, Bankruptcy Judge.

Debtor Richard Myung Park ("Park") ran a used car dealership on the northwest side of Chicago. Mannheim Automotive Financial Services, Inc. ("MAFS") provided inventory financing to the dealership. After Park sought protection under chapter 7 of the Bankruptcy Code, MAFS and another entity, Mannheim Services Corp. ("MSC"), filed a short and sparse three-count adversary complaint objecting to the dischargeability of Park's debt to them and also objecting to Park's discharge.

Park now moves to dismiss the complaint under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. The court set a briefing schedule on the motion, but no response to the motion was filed. For the reasons discussed below, Park's motion will be granted as to the first two counts. Those will be dismissed with leave to amend. As to the third count, the motion will be treated as one for a more definite statement under Rule 12(e), and that motion will be granted as well.

## 1. Facts

■ The complaint, including the two exhibits attached to it, alleges the following facts.[1] Park was president of a Chicago used car dealership doing business under the name "Auto Plaza, Inc." (Compl., Ex. A at 8). In September 2000, Park signed a security agreement and promissory note in favor of MAFS. (Compl., Ex. A). Park signed the note as president of Auto Plaza and also individually as guarantor. (*Id.* at 2).

Under the agreement and note, MAFS advanced a $150,000 line of credit to Auto Plaza to finance Auto Plaza's acquisition of vehicles. (*Id.* at 4). The agreement obligated Auto Plaza to pay monthly installments only of interest due on the balance, but any advance for a vehicle Auto Plaza sold was payable either 48 hours after the sale or 24 hours after Auto Plaza received payment from the buyer. (*Id.* at 1, 2). (This common financing arrangement for car dealers is known as a "floorplan" line of credit. *See Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F.Supp. 1437, 1440 (S.D.Fla.1995).) MAFS duly perfected its security interest in Auto Plaza's inventory, filing financing statements with the appropriate state authorities. (*Id.* at 1, 2).

---

1. Rule 10(c) makes an exhibit to a pleading "a part thereof for all purposes." Fed. R.Civ.P. 10(c). Exhibits to a complaint can therefore be consulted in determining the sufficiency of a complaint for purposes of Rule 12(b)(6). *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir.2002).

The complaint does not describe where Auto Plaza obtained vehicles for sale, but it may have obtained them from MSC, the other plaintiff here. The security agreement recites that Auto Plaza wanted to buy vehicles "through various automotive auctions" (Compl., Ex. A at 4), and MSC allegedly does business as "Greater Chicago Auto Auction" (Compl., ¶ 2). Apart from asserting the conclusion that MSC was a "creditor of the Debtor" (*id.*), however, the complaint never identifies what relationship Auto Plaza—let alone Park—had with MSC or how MSC became Park's creditor.

At some point, Park also submitted to MAFS (and allegedly to MSC) a financial statement dated October 2, 2003, along with both his and Auto Plaza's 2002 federal income tax returns. (Compl., ¶ 12 and Ex. B). These documents were submitted "in order to obtain money and/or receive continuing credit" from MAFS and MSC. (Compl., ¶ 12). Both MAFS and MSC relied on the documents to make loans or advance credit. (*Id.* at ¶ 14). It turned out that "[t]he documents were false." (*Id.* at ¶ 15).

■ Park also sold vehicles "out of trust." (*Id.* at ¶ 8). Although the complaint leaves that phrase unexplained, a dealer sells a car "out of trust" when he sells it and then fails to remit the proceeds to his lender under the floorplan financing agreement. *See Automotive Fin. Corp. v. Smart Auto Ctr., Inc.*, 334 F.3d 685, 687 (7th Cir.2003); *Keys Jeep Eagle*, 897 F.Supp. at 1441; *Chrysler Credit Corp. v. Smith (In re Smith)*, 143 B.R. 284, 291 (Bankr.M.D.Ga.1992). Park therefore allegedly sold certain vehicles but did not send the funds to MAFS. And when he did send them, Park tendered checks that were returned for insufficient funds. (Compl., ¶ 10). All told, Park owes MAFS and MSC more than $150,000. (*Id.* at ¶ 9).

Count I of the complaint appears to be an attempt to assert a claim that Park's debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). That count cites section 523(a)(2)(A), alleges that Park sold vehicles " 'out of trust' (i.e., fraudulently)," and asks that the resulting debt be declared non-dischargeable. Count II is presumably a claim for non-dischargeability under section 523(a)(2)(B), since it alleges that the financial statements and tax returns were "false." Count III, finally, realleges the relatively few facts in the preceding counts and then asserts the conclusions, sometimes with citations to the Code and sometimes without, that Park should be denied a discharge under 11 U.S.C. §§ 727(a)(2), (3), (4)(A), (5) and (6)(B).

## 2. Discussion

Park asks the court to dismiss Counts I and II under Rule 9(b), which demands that fraud be pled "with particularity." Fed.R.Civ.P. 9(b). Park is right: there is nothing "particular" about Counts I and II—they are virtually opaque—and Park's motion will be granted with leave to amend. Park also asks the court to dismiss Count III under Rule 12(b)(6) because that count alleges only legal conclusions. Park is right again, but the solution is to require a more definite statement of the claim under Rule 12(e). MAFS and MSC will, in short, be given a chance to rework their entire complaint.

### a. Counts I and II

Counts I and II assert fraud claims—Count I under section 523(a)(2)(A) and Count II under section 523(a)(2)(B). Neither count pleads fraud with the "particularity" that Rule 9(b) demands.

■ Ordinarily, federal pleading standards ask a plaintiff to do no more than "state the nature of [his] claim" in such a way that the defendant has notice of it. *Alliant Energy Corp. v. Bie*, 277 F.3d 916,

919 (7th Cir.2002). Rule 9(b), however, subjects allegations of fraud to a "heightened pleading standard." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir.1998). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b) (made applicable by Bankruptcy Rule 7009, Fed. R. Bankr.P. 7009).

▪ "Particularity" under Rule 9(b) means " 'the who, what, when, where, and how: the first paragraph of any newspaper story.' " *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir.1996) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)). Put differently, Rule 9(b) requires that a complaint identify who made the misrepresentation; state the time, place and content of the misrepresentation; and describe how the misrepresentation was communicated. *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir.2003); *Goren*, 156 F.3d at 726; *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir.1997).

▪ The goal of this more stringent standard is usually described as ensuring that a defendant has adequate notice of the specific activity claimed to be fraudulent "so that the accused party may file an effective responsive pleading." *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir.1999). But the court of appeals has also offered a different take on the rule. In *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467 (7th Cir.

1999), the court declared that Rule 9(b) is not about notice at all. *Id.* at 469 (noting that "[a] charge of fraud is no more opaque than any other charge"). Because claims of fraud are often made "irresponsibly" and can damage reputations, the court said, Rule 9(b) is really meant "to force the plaintiff to do more than the usual investigation before filing his complaint." *Id.*

▪ Count I of the complaint here gives neither notice nor any assurance that an adequate pre-filing investigation was performed. In Count I, MAFS and MSC assert merely that Park sold vehicles "out of trust" and tendered checks that "were returned NSF." (Compl., ¶¶ 8, 10). The complaint does not disclose what vehicles were sold "out of trust" and when. It does not say what checks were tendered, when, and to whom. Nor does the complaint indicate what it was about these alleged actions that made them fraudulent, or when, where and how the fraud took place. Although MAFS and MSC assume otherwise, selling cars out of trust is not inherently fraudulent.[2] Nor is the submission of NSF checks, without more, considered fraud. *Bednarsz v. Brzakala (In re Brzakala)*, 305 B.R. 705, 710 (Bankr.N.D.Ill. 2004). Greater detail is necessary for Count I to survive.

▪ Count II likewise needs work. That count merely alleges that Park submitted his financial statement, his tax return, and Auto Plaza's tax return (Compl., ¶¶ 12–13), that MAFS and MSC relied on

---

**2.** Perhaps for this reason non-dischargeability claims against car dealers for selling out of trust are typically brought as conversion claims under section 523(a)(6) rather than as claims under section 523(a)(2). *See, e.g., Internet Automotive Group v. Shaffer (In re Shaffer)*, 305 B.R. 771, 775–79 (Bankr.D.S.C. 2004); *Smith*, 143 B.R. at 291; *Central Fid. Bank F.S.B. v. Higginbotham (In re Higginbotham)*, 117 B.R. 211, 214–16 (Bankr.

E.D.Va.1990); *Ford Motor Credit Co. v. Gallaudet (In re Gallaudet)*, 46 B.R. 918, 925–27 (Bankr.D.Vt.1985); *General Elec. Credit Corp. v. Graham (In re Graham)*, 7 B.R. 5, 6–7 (Bankr.D.Nev.1980). The complaint here in fact states a claim under section 523(a)(6). If MAFS and MSC wish to proceed under that section rather than under section 523(a)(2)(A), no amendment is needed.

these documents to "make loans or continue[ ] to advance credit" (*id.* at ¶ 14), and that the documents "were false" (*id.* at ¶ 15). Count II does not say when the financial statements and tax returns were submitted, how they were submitted, what precisely was obtained as a result, and when. More important, Count II nowhere discloses just what aspect of the financial statements and tax returns—22 pages in all—was in fact "false," a critical omission. As with Count I, more detail is necessary for Count II to satisfy Rule 9(b).

Because neither Count I nor Count II of the complaint complies with Rule 9(b), those counts are dismissed. MAFS and MSC will have leave to file an amended complaint that satisfies the rule.

### b. Count III

Count III, meanwhile, alleges no facts at all—at least none relevant to the sections of 727 the complaint purports to invoke. Count III fails to state any sort of claim under section 727. The remedy, however, is not dismissal. MAFS and MSC will instead be given a chance under Rule 12(e) to provide a more definite statement.

The court of appeals has delivered frequent reminders that federal practice requires only "notice pleading": Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief," nothing more. Fed.R.Civ.P. 8(a) (made applicable, with a variation not relevant here, by Bankruptcy Rule 7008(a), Fed. R. Bankr.P. 7008(a)). Under Rule 8, the court has repeatedly stressed, a plaintiff need not "plead either facts or law." *Johnson v. Wattenbarger,* 361 F.3d 991, 994 (7th Cir.2004); *see also Shah v. Inter–Continental Hotel Chicago Operating Corp.,* 314 F.3d 278, 282 (7th Cir.2002) (stating that "a plaintiff is not required to plead facts or legal theories"); *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998) (declaring that a complaint need not "allege all, *or any,* of the facts logically entailed by the claim") (internal quotation omitted) (emphasis in original).

But there must be some limit to this "no facts" concept, and that limit is notice. Certainly, no *specific* facts need be alleged, and a complaint cannot be dismissed merely because it happens to plead fact one rather than fact two. In a notice pleading regime, plaintiffs should not be "larding their complaints with facts." *Bennett,* 153 F.3d at 518. But there must at least be *some* facts. A complaint with *no* facts cannot serve even the minimal notice function Rule 8 confers: a complaint of that kind does not "allow the court and the defendant to understand the gravamen" of the claim. *McCormick v. City of Chicago,* 230 F.3d 319, 324 (7th Cir.2000) (internal quotation omitted).

It will not satisfy Rule 8, then, for a plaintiff simply to name a defendant, declare "he done me wrong," and then ask for loads of cash. *See, e.g., Beanal v. Freeport–McMoran, Inc.,* 197 F.3d 161, 166 (5th Cir.1999) (affirming dismissal of complaint without "any facts" and noting that Rule 8 "require[s] more than bare bone allegations that a wrong has occurred") (internal quotation omitted); *see also* 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1216 at 235–36 (3d ed.2004) (stating that "in order to satisfy the requirements of Rule 8(a) the pleading must contain something more ... than a bare averment that the pleader wants compensation and is entitled to it"). To give the notice Rule 8(a) requires, at least a few facts are essential.[3]

---

**3.** To illustrate this principle, compare one hypothetical complaint alleging simply that "I was turned down for a job because of my race" with another alleging only that "the

Count III of the complaint here alleges no facts. That count consists of five single-sentence subparagraphs. Each states the simple conclusion that Park violated a different subsection of section 727(a), parroting the language of the subsection itself, but without saying how he violated it. (Compl., ¶ 17(a)-(e)). In some instances, though not all, a statutory citation is provided. So, for example, paragraph 17(d) declares without more that "the debtor has failed to satisfactorily explain the loss of income and has failed to satisfactorily explain a deficiency of assets to meet the debtor's liabilities," an almost verbatim rendition of section 727(a)(5) which is then cited. No information at all explains *what* loss of income or *what* deficiency of assets. And the facts incorporated by reference from other counts shed no light on the matter because they are unrelated to the allegations in Count III. This sort of complaint—the bald assertion that a party violated a statute, unaccompanied by any description of the conduct that violated it—gives no notice of the claim, does not comply with Rule 8(a), and does not state a claim.[4]

The question is what to do about Count III. The appropriate course is not dismissal, at least not yet. Under Rule 12(e), a "more definite statement" can be ordered when a complaint "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading," Fed.R.Civ.P. 12(e) (made applicable by Bankruptcy Rule 7012(b), Fed. R. Bankr.P. 7012(b)), an apt description of Count III. Moreover, the court of appeals has instructed that trial courts should employ Rule 12(e) rather than Rule 12(b)(6) when a complaint is unclear. *See, e.g., Hoskins v. Poelstra,* 320 F.3d 761, 764 (7th Cir.2003); *Scott v. City of Chicago,* 195 F.3d 950, 952 (7th Cir.1999); *Bennett,* 153 F.3d at 518; *Cook v. Winfrey,* 141 F.3d 322, 328 (7th Cir.1998). Rule 12(e), then, is the answer.

Because Count III is insufficiently clear to permit Park to answer, the court will treat Park's motion to dismiss as a motion for a more definite statement. MAFS and MSC will be ordered to provide a more definite statement of their claims in Count III.[5]

### 3. Conclusion

For the foregoing reasons, the motion of debtor Richard Myung Park to dismiss Counts I and II of the complaint pursuant to Rule 9(b) is granted. Park's motion to dismiss Count III of the complaint pursuant to Rule 12(b)(6) is treated as a motion for a more definite statement and as such is also granted. Plaintiffs Mannheim Automotive Financial Services, Inc. and

---

defendant violated Title VII of the Civil Rights Act of 1964." The first complaint, the court of appeals has said, satisfies Rule 8(a) and states a claim under Title VII. *See Bennett,* 153 F.3d at 518. It also alleges facts, albeit not many. The second complaint, on the other hand, alleges no facts at all. It gives no notice to the defendant of the nature of the claim, does not satisfy Rule 8(a) and does not state a claim.

4. It is worth noting that paragraphs 17(a) and (c), which assert violations of sections 727(a)(2) and (a)(4)(A) and so allege fraud, also fail to comply with Rule 9(b).

5. The more definite statement should, of course, appear as part of Count III of the amended complaint that MAFS and MSC will be filing to make Counts I and II comply with Rule 9(b). Lawyers confronted with an order under Rule 12(e) have been known to respond by filing a document captioned: "More Definite Statement." The right response is to file an amended pleading clarifying the claim that prompted the Rule 12(e) order. 5C C. Wright & A. Miller, *supra,* § 1379 at 382 ("To comply, the party must submit an amended pleading containing sufficient detail to satisfy the court's direction and to meet the opponent's valid objections to the earlier pleading.").

Mannheim Services Corp. are given leave to file an amended complaint in 21 days. Park has 14 days thereafter to answer or otherwise plead. This matter is set for a further status hearing on October 27, 2004 at 10:00 a.m.