**HIRATA CORPORATION and Hirata Corporation of America,**
**Plaintiff,**

v.

**J.B. OXFORD AND COMPANY,**
**Defendant.**

**No. IP 1425–C–B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 30, 2000.

Edward O. Delaney, Barnes & Thornburg, Indianapolis, IN, for Plaintiffs.

Robert L. Cram, Indianapolis, IN, Phillip M. Goldberg, Foley & Lardner, Chicago, IL, for Defendants.

## ENTRY GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

BARKER, District Judge.

Plaintiffs, Hirata Corporation and Hirata Corporation of America (collectively "Hirata"), allege that Stratton Oakmont ("Stratton"), a New York-based securities broker, sold securities in Indiana without being properly registered in Indiana, including the sale of securities purchased with Hirata funds, and that Stratton's actions were an attempt to defraud Hirata. Hirata filed suit in Indiana state court alleging that Defendant, J.B. Oxford & Company ("J.B. Oxford") materially aided Stratton on both counts, in violation of Indiana Code § 23-2-1-19(d). J.B. Oxford removed the action to us, pursuant to 28 U.S.C. § 1441(a), and now seek to dismiss the complaint for failing to satisfy the pleading requirements of Federal Rule of Civil Procedure ("Rule") 9(b) and for failing to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6). For the reasons discussed below, Defendant's motion must be *GRANTED IN PART* and *DENIED IN PART.*

### Standard of Review

J.B. Oxford has attached two documents to its brief in support of its motion to dismiss, our consideration of which Hirata opposes. Although Hirata has not formally moved to strike these attachments, we take their opposition to be tantamount to such a motion. Before we narrate the facts relevant to the Defendant's substantive motion, we must clarify the standard of review for a Rule 12(b)(6) motion involving an allegation of fraud and delineate the factual assertions that shape our analysis.

### A. Standard of Review for a Rule 12(b)(6) Motion

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a claim for "failure to state a claim upon which relief may be granted." *See* FED.R.CIV.P. ("RULE") 12(B)(6). When considering a motion under this rule, the Court must examine the sufficiency of the plaintiff's complaint, not the merits of the lawsuit. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520–21 (7th Cir. 1990); *Triad Assocs., Inc. v. Chicago Housing Auth.,* 892 F.2d 583, 585 (7th Cir.1989), *abrogated on other grounds by Board of County Comm'rs, v. Umbehr,* 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). Dismissal is appropriate only if it appears to a certainty that the plaintiff cannot establish any set of facts which would entitle him to the relief sought. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Mosley v. Klincar,* 947 F.2d 1338, 1339 (7th Cir.1991). We accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992).

### B. Pleading Standard Imposed by Rule 9(b)

The Federal Rules employ a notice-based pleading system rather than a fact-based pleading system. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Cook v. Winfrey,* 141 F.3d 322, 327 (7th Cir.1998); RULE 8. A party's complaint should provide the opposing party "fair notice of what the [ ] claim is and the grounds upon which it rests." *Leatherman,* 507 U.S. at 168; 113

S.Ct. 1160 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Thus, rather than requiring the plaintiff to plead all of the facts underlying the alleged claim, the general rule simply requires "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

However, when the complaint contains an allegation of fraud, more stringent requirements are imposed. *See* RULE 9(b). Rule 9(b) requires a plaintiff to plead all averments of fraud with particularity. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994). Providing the defendant with "fair notice is 'perhaps the most basic consideration' underlying Rule 9(b)." *Vicom, Inc.*, 20 F.3d at 777–78 (quoting 5 Wright & Miller, Federal Practice and Procedure ("Wright & Miller") § 1298, at 648 (1969)). Rule 9(b) was designed to protect a defendant's reputation from unfair harm and to minimize "strike suits" and "fishing expeditions." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir.1992). Rule 9(b) achieves this result by "forc[ing] the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir.), *cert. denied,* — U.S. ——, 120 S.Ct. 178, 145 L.Ed.2d 151 (1999).

■ In the Seventh Circuit, a plaintiff may satisfy Rule 9(b) by providing a "general outline" of the circumstances constituting the alleged fraud, sufficient to "reasonably notify the defendant[ ] of [its] purported role" in the fraud. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir.1992). Generally, this outline must include "the identity of the person making .the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344, 352 (7th Cir.1992); *see also General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir.1997). "By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is respon-sible and supported, rather than defamatory and extortionate." *Ackerman*, 172 F.3d at 469. These requirements are tempered somewhat where a plaintiff alleging fraud does not have access to all the facts necessary to provide details, such as when those facts are within the exclusive knowledge of the defendant. *See Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir.1996); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir.1994); *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir.1992).

### C. Matters Properly Considered on a Rule 12(b)(6) Motion

■ For the purposes of a Rule 12(b)(6) motion, the pleadings include the complaint, the answer, and any written instruments attached to the complaint as exhibits. *See Marshall–Mosby v. Corporate Receivables, Inc.*, 194 F.3d 830, 835 (7th Cir.1999), *rev'd on other grounds*, 205 F.3d 323 (2000); *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988); *see also* Rule 10(c) (providing that written documents attached to the complaint are considered "a part thereof for all purposes."). However, Rule 10(c) is permissive in nature; a plaintiff is under no obligation to attach to her complaint the documents upon which her action is based. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993).

■ But, if a document is specifically referenced by the complaint and central to the plaintiff's claim, we may consider that document as part of the pleadings if it is attached to a defendant's motion attacking the sufficiency of the complaint. *See id.;* Wright & Miller § 1337, at 762–63. The policy that permits us to consider documents attached by defendant and expressly incorporated into the complaint is to "[p]revent[ ] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir.), *cert. denied,* 525 U.S. 1001, 119 S.Ct. 510, 142 L.Ed.2d 423 (1998) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)). The Seventh Circuit considers

this "a narrow exception aimed at cases interpreting, for example, a contract. It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment...." *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir.1998).

█ Applying this rationale, our circuit deemed appropriate on a motion to dismiss the consideration of the agreement that formed the contractual relationship between the parties where the plaintiff's claim was either for breach of contract or tortious interference of that contractual relationship. *See Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir.1994); *Venture Assocs. Corp.,* 987 F.2d at 431; *see also Kaczmarek .v. Microsoft Corp.,* 39 F.Supp.2d 974, 975–76 (N.D.Ill.1999) (same); *cf. Duferco Steel, Inc. v. M/V Kalisti,* 121 F.3d 321, 324 & n. 3 (7th Cir.1997) (holding district court properly considered documents explicitly referred to in, but not attached to, complaint). This exception has been extended to documents central to the plaintiff's claim which were implicitly incorporated into, although not explicitly referred to by, the complaint. *See Magellan Int'l Corp. v. Salzgitter Handel GmbH,* 76 F.Supp.2d 919, 922–23 (N.D.Ill.1999) (holding documents attached to defendant's motion to dismiss were "implicitly" incorporated into plaintiff's complaint where plaintiff attached only portions of the chain of correspondence between the parties constituting the transaction upon which the claim was based and defendant attached to its motion the remainder of the documents comprising that chain); *MJ & Partners Restaurant Ltd. v. Zadikoff,* 10 F.Supp.2d 922, 931–32 (N.D.Ill.1998) (holding central to plaintiffs' breach of fiduciary duty claim contracts proffered by defendants on motion to dismiss where contracts defined defendant's relationship to plaintiffs).[1]

We are admonished to be diligent in policing the line between those documents included as a part of the pleadings and those that constitute evidence that, while presumably admissible and relevant at trial, nonetheless are not properly considered on a motion to dismiss. In *Lincoln Nat'l Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 9 F.Supp.2d 994 (N.D.Ind.1998), the defendant attached to its motion to dismiss a Private Placement Memorandum, the "principal disclosure document for the securities at issue in plaintiff's allegation that defendant violated the Indiana Securities Act." *Id.* at 997. The district court held that it was improper to consider this document in connection with the motion to dismiss. *See id.* at 999. Although the court was of the view that the document was clearly evidence that would be relevant at trial and possibly central to defendant's defense, at this juncture it was extrinsic to the pleadings, having been only attached to defendant's motion to dismiss, but neither quoted, discussed nor otherwise referenced in the complaint. *See id.*

In *Ninth Ave. Remedial Group v. Allis Chalmers Corp.,* 974 F.Supp. 684, 686 (N.D.Ind.1997), plaintiff alleged that defendants were "potentially responsible parties" ("PRPs"), under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.,* and therefore liable for the costs to clean-up a Superfund site. *Id.* at 686. On a motion to dismiss plaintiff's claim, the defendant attempted to place before the court a draft order by the Indiana Stream Pollution Control Board ("ISPCB") and two letters from the ISPCB regarding the use and disposal of hazardous waste at a Superfund site. *See id.* at 686–87. The court held that plaintiff's "general reference" in the complaint to the fact that the defendants were PRPs was, by itself, insufficient to warrant consideration of defendants' exhibits since "to the point that those exhibits clarify the role of [one of the defendants] in regard to the [superfund site], they might be relevant evidence but they are not necessary to state a claim against Defendants upon which relief can be

---

1. Other circuits have ruled that, on a Rule 12(b)(6) motion, the district court may consider a document proffered by defendant even though not expressly referred to in the complaint, so long as the plaintiff's claim "necessarily relies" or is "predicated" upon the document or the document is "integral" to the complaint. *See Parrino,* 146 F.3d at 706; *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991).

granted." *Id.* at 687. Thus, defendants' attachments were excluded on the motion to dismiss. *See id.*

Bearing these things in mind, we turn to Defendant's proffered attachments in the case at bar. Hirata alleges that:

[J.B. Oxford] had a relationship with Stratton prior to Stratton's demise. Stratton was an introducing broker and could not complete any transactions without [J.B. Oxford's] assistance. [J.B. Oxford] processed transactions for Stratton. Among other things, [J.B. Oxford] maintained books and records of Stratton accounts, executed and 'cleared' securities transactions for Stratton, and prepared and mailed Stratton's customer statements.

Compl. ¶ 4 (emphasis added). In response, J.B. Oxford seeks to have us consider two documents which it attached to its motion to dismiss: First, the Clearing Agreement which purports to delineate the separate functions of J.B. Oxford, as clearing firm, and Stratton, as introducing broker. *See* Defendant's Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' Complaint Pursuant to Rules 9(b) and 12(b)(6) and for an Order Staying Discovery ("Def.'s Memo.") at 2; Def.'s Memo., Ex. A. ("Clearing Agreement").[2] Second, a form letter, sent by Stratton to all of its customers as required by New York Stock Exchange Rule 382, which J.B. Oxford claims "informed Stratton's customers of J.B. Oxford's limited role as a clearing firm." Def.'s Memo. at 4; Def.'s Memo., Ex. B. ("Rule 382 Letter").

J.B. Oxford maintains that these documents are central to Hirata's claim because they "constitute the core of the contractual relationship between the parties." Defendant's Reply in Support of Its Motion to Dismiss Plaintiffs' Complaint Pursuant to Rules 9(b) and 12(b)(6) ("Def.'s Reply") at 9 (quoting *Venture Assocs. Corp.*, 987 F.2d at 431). J.B. Oxford contends that these documents are properly considered on its motion to dismiss because "the clearing relationship between J.B. Oxford and Stratton forms the sole basis for Plaintiffs' aiding and abetting claim against J.B. Oxford. The Clearing Agreement constitutes the core of this contractual relationship, which is merely recited in the Rule 382 Letter." Def.'s Reply at 9–10. In addition, J.B. Oxford contends that Hirata refers to the "clearing relationship" in the Complaint and that the allegations contained in paragraph 4 of the Complaint "refer to functions specifically designated by the Clearing Agreement and the Rule 382 Letter." *Id.* at 10. Hirata counters that neither the Clearing Agreement nor the Rule 382 Letter is referred to in the complaint and are therefore not properly to be considered on a motion to dismiss. *See* Plaintiff's Brief Opposing Motion to Dismiss ("Hirata's Br.") at 3.

In relying on *Venture Associates Corp., supra,* J.B. Oxford misconstrues the extent to which the Seventh Circuit intended for the parties' contractual relationship to be "central" to a plaintiff's claim. *Venture Associates Corp.* involved a claim for breach of contract; obviously, when the claim pursued is for breach of contract, the contractual relationship between the parties is central to that claim. However, in this case Hirata is not asserting breach of contract against J.B. Oxford. Rather, it asserts that J.B. Oxford's actions and omissions "materially aided" Stratton, in violation of Ind.Code § 23–2–1–19(d). *See* Compl. ¶¶ 22–30. While it is possible that J.B. Oxford will be able to rely on the contractual relationship to help elucidate the limited role it played in an effort to limit or eliminate liability, we agree with the holding in *Lincoln National Life Insurance Co.* and *Ninth Avenue* to the effect that factual matters, such as the existence of a defense to Hirata's claims, are best resolved at trial, or on summary judgment, where all of the evidence has been mustered by both sides.

Moreover, J.B. Oxford's reliance on Hirata's mention of the clearance relationship in

---

**2.** The motion before us initially included a request to stay discovery pending resolution of the motion to dismiss. *See* Def.'s Memo. at 14–15. Magistrate Judge Shields granted this motion by Entry dated December 8, 1999, staying discovery until January 28, 2000. *See* Entry for December 8, 1999. As Defendant did not reassert this motion thereafter, it is not before us at this time and accordingly will not be addressed in this entry.

its complaint misapprehends the "narrow exception" which allows us to consider documents attached to the defendant's motion to dismiss without converting the motion into one for summary judgment. Although Hirata "referred" to the clearing relationship between J.B. Oxford and Stratton, *see* Compl. ¶ 4, such a reference is not enough to require us to examine that contractual relationship to determine whether Hirata has failed to state a claim.[3] Hirata need not base its claim against J.B. Oxford on the fact that J.B. Oxford materially aided Stratton because of their contractual relationship. Hirata alleges that "Stratton ... could not complete any transactions on its own without [J.B. Oxford's] assistance," Compl. ¶ 4, a factual contention we must accept as true. This allegation could be predicated on acts encompassed by the contractual relationship between Stratton and J.B. Oxford or it might refer to actions or omissions that extended beyond the contractual relationship implying that J.B. Oxford played a more significant role than the Clearing Agreement delineates.

For these reasons, we *GRANT* Hirata's motion to strike Exhibits A and B to J.B. Oxford's memorandum and will not consider the contents of those documents in deciding J.B. Oxford's motion to dismiss for failure to state a claim upon which relief may be granted.

### *Factual Background*

Having now defined the scope of our considerations, we turn to the background facts relating to this dispute. Plaintiff, Hirata Corporation, is a Japanese company, whose wholly-owned subsidiary, Hirata Corporation of America, is incorporated in Indiana. *See* Compl. ¶ 1. Defendant J.B. Oxford is a securities· broker-dealer, with offices nationally, doing business in Indiana as a registered broker-dealer in Indiana. *See id.* ¶ 2. J.B. Oxford is primarily a discount broker, but it also provides brokerage services for other brokers. *See id.*

Stratton Oakmont, a New York-based securities broker, was closed in 1996 by securities regulators. *See id.* ¶ 3. Prior to the shut down, Stratton and J.B. Oxford worked together: Stratton was an " 'introducing' broker and could not complete any transactions on its own without [J.B. Oxford's] assistance." Compl. ¶ 4. "[J.B. Oxford] processed securities transactions for Stratton. Among other things, [J.B. Oxford] maintained books and records of Stratton accounts, executed and 'cleared' securities transactions for Stratton, and prepared and mailed Stratton's customer account statements." *Id.*

Hirata alleges that during this relationship, Stratton had a history of regulatory and legal problems, of which J.B. Oxford had full knowledge, including allegations of fraud and deceptive acts in the sales of securities, and accusations of securities sales in states in which Stratton was either not registered, not licensed to sell such securities, or its license had been suspended. *See id.* ¶¶ 5–6. Hirata further alleges that J.B. Oxford "knew or had reason to know" that Stratton was engaging in such illegal practices—selling securities in states where Stratton was not authorized to sell securities and engaging in fraud and deceptive acts in connection with the sale of securities. *See id.* ¶¶ 7–8

Hirata further contends that sometime in 1996, without its knowledge or consent, Stratton used Hirata's funds to purchase securities, including securities issued by MVIS, International Dispensing and Paramount Financial ("Hirata transactions"). *See id.* ¶ 9. Specifically, Hirata alleges that over a period of six months, a Stratton representative contacted by telephone a Hirata employee located at Hirata's Indianapolis office to solicit and conduct these securities transactions. *See id.* ¶ 10. Thus, Hirata alleges, the transactions were the result of Stratton's solicita-

---

**3.** To be clear, it is not Hirata's failure to refer adequately to the contractual relationship between J.B. Oxford and Stratton that precludes us from reviewing these documents. If the relationship were not referenced, but Hirata implied that its cause of action was tied to the contractual obligations imposed upon J.B. Oxford, the contract could be considered part of the pleadings, even if attached to the motion to dismiss and not the complaint. In contrast, the extent to which Stratton and J.B. Oxford contractually limited liability between them is not central to .Hirata's claim, which precludes us from considering such information in the context of J.B. Oxford's motion to dismiss.

tion of securities transactions in Indiana, although Stratton's Indiana registration had been previously revoked and neither Stratton nor its representatives were registered to sell securities in Indiana. *See id.* ¶¶ 10–12. Hirata argues that Stratton's actions violated Indiana Code §§ 23–2–1–8, 23–2–1–12 and/or 23–2–1–12.1. *See id.* ¶¶ 13–14.

Hirata claims it lacked any knowledge of the Hirata transactions, the existence of the accounts used to make the transactions, and Stratton's failure to be registered to sell securities in Indiana. *See id.* ¶ 15. According to Hirata's allegations, Stratton's scheme involved setting up accounts in Hirata's name outside Indiana, including one with a Louisiana address and one with a California address. *See id.* ¶ 16. Stratton would then request that J.B. Oxford send "duplicate" customer account statements for these accounts to the Hirata employee in Indiana. *See id.* ¶ 17. Stratton was also alleged to have manipulated the markets for the Hirata transactions, including changing the closing dates for trades and setting the market price for the trades in advance. *See id.* ¶ 18.

Hirata contends that these actions constitute a "device, scheme or artifice to defraud[;] ... making untrue statements and/or omissions that were misleading[;] ... [and] an act, practice or course of business which operates or would operate as a fraud or deceit upon any person." *Id.* ¶ 19. As a result, Hirata claims to have suffered injuries including, but not limited to, the loss of funds invested in the Hirata transactions. *See id.* ¶ 20.

Hirata also contends that J.B. Oxford "materially aided" Stratton in the illegal conduct outlined above, claiming that J.B. Oxford "knew, or with reasonable diligence should have known" of Stratton's non-licensed sale of securities in Indiana. *See id.* ¶¶ 24–25, 28. J.B. Oxford "knew or with the exercise of reasonable diligence should have known" that Stratton was "employing a device or artifice to defraud, making untrue statements or omissions that were misleading, and/or engaging in acts, practices or a course of business which operated or which would operate as a fraud or deceit upon any person." *Id.* ¶ 29. Therefore, Hirata argues, J.B. Oxford

is jointly and severally liable for Stratton's violations under Indiana Code § 23–2–1–19(d). *See id.* ¶¶ 26, 30.

### *Discussion*

J.B. Oxford contends that none of Hirata's allegations are pled with the particularity required by Rule 9(b). *See* Def.'s Memo. at 6–8. Hirata responds that Rule 9(b) only requires Hirata to plead with particularity the factual allegations relating to the underlying fraud committed by Stratton, or, in the alternative, that Hirata has met the pleading requirements of Rule 9(b) with respect to the allegations against J.B. Oxford. *See* Hirata Br. at 4–8.

### A. *Application of Rule 9(b)*

As stated above, Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b). Hirata argues, and we agree, that by its very terms Rule 9(b) does not apply to Count I of the complaint, which contains no averment of fraud; nor does it rely on a claim of fraud. Count I is predicated upon Stratton's conduct—selling securities in Indiana without the proper registration—and J.B. Oxford's actions materially aiding Stratton in such action. *See* Compl. ¶¶ 22–26. As such, Rule 9(b) does not apply. *See* RULE 9(b); *cf. Local 875 I.B.T. Pension Fund v. Pollack,* 992 F.Supp. 545, 561–62 (E.D.N.Y. 1998) (stating that Rule 9(b) was applicable to averments of fraud or mistake but not to conspiracy); *Stern v. American Bankshares Corp.,* 429 F.Supp. 818, (E.D.Wis.1977) (holding that count of complaint based upon sale of unregistered securities need not be pled with particularity since the cause of action therein was not predicated upon fraud); Wright & Miller § 1297, at 615 ("By its terms, the particularity requirement in Rule 9(b) applies only to averments of fraud."). Thus, at most, Rule 9(b) applies to Count II of Hirata's complaint.

■ Moreover, simply because a plaintiff's claim includes within it averments of fraud, thereby imposing the more stringent pleading requirements of Rule 9(b), it does not

follow that all of the averments contained within that claim must comply with Rule 9(b). The Federal Rules generally require only a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ," Rule 8(a), and the particularity requirement of Rule 9(b) must be read in conjunction with this liberal pleading requirement. *See Lachmund v. ADM Investor Servs., Inc.,* 191 F.3d 777, 782 (7th Cir.1999); *Lincoln Nat'l Life Ins. Co.,* 9 F.Supp.2d at 1006; Wright & Miller § 1298, at 617.

> Rule 9(b) can most effectively be confined to its proper domain when we remember that its purpose is to ensure that the *party accused of fraud,* a matter implying some degree of moral turpitude and often involving a 'wide variety of potential conduct,' is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading. Courts have a special institutional interest in seeing that such allegations are made with care so that claims advanced solely for their nuisance or settlement value can be quickly identified and valuable public judicial resources not wasted.

*Lachmund,* 191 F.3d at 782 (emphasis added) (quoting Wright & Miller § 1298).

As we have noted, the purpose underlying Rule 9(b)'s requirements does not insist on particularity of all the averments contained in Count II. In *In re Storage Technology Corp. Securities Litigation,* 147 F.R.D. 232 (D.Colo.1993), the plaintiff shareholders alleged that certain defendants were liable for aiding and abetting a violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5. The defendants contended that Rule 9(b) required all allegations concerning the aiding and abet-

ting charges to be pled with particularity because the Section 10(b) claim involved allegations of fraud. *See id.* at 234–35. The District Court of Colorado determined, however, that "[a]iding and abetting is not a pure fraud claim." *See id.* at 235. The court continued, holding that Rule 9(b) required pleading with particularity only "insofar as the section 10(b) violation is concerned" but that "the other elements of an aiding and abetting claim may be pled generally." *Id.* Since the plaintiffs had pled with particularity the Section 10(b) violation against the primary violators, that court determined that Rule 9(b) was satisfied. *See id.*

■ We find this reasoning persuasive. Hirata is not alleging that J.B. Oxford itself acted in a fraudulent manner, rather that Stratton committed the alleged fraudulent acts. Nor is Hirata alleging that J.B. Oxford is primarily liable for Stratton's fraudulent activity under an agency theory. Rather, Hirata seeks to impose secondary liability upon J.B. Oxford, pursuant to Indiana law which, by its terms, allows liability to attach when the accused has not personally acted in a fraudulent manner. Absent allegations of fraud on the part of J.B. Oxford directly, Hirata's complaint does not impugn J.B. Oxford's reputation. Thus, none of the policy reasons requiring pleading with particularity apply to Hirata's allegations against J.B. Oxford. We therefore hold that Rule 9(b) requires Hirata to plead with particularity those averments that specifically relate to fraud by Stratton and that the averments relating to the relationship between Stratton and Hirata may be pled generally.[4]

### B. Hirata's Averments of Fraud

Hirata contends that its complaint meets the standard for pleading fraud imposed by

---

4. Our holding is consistent with that of the Seventh Circuit in *Lachmund.* There, unlike here, the plaintiff alleged fraud by a principal through the actions of an agent. *See Lachmund,* 191 F.3d at 782–83. The court held that "when the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant," the reasons underlying Rule 9(b) apply "with equal force to the issue of agency and to the underlying fraud claim." *Id.* at 783. However, Hirata does not allege a prin-

cipal-agent relationship between Stratton and J.B. Oxford and the fraudulent acts alleged to have been made by Stratton have no direct bearing on the relationship that existed between Stratton and J.B. Oxford. Reading the general pleading rule contained in RULE 8 together with the particularized pleading rule found in Rule 9(b), we distinguish between the interests protecting a defendant alleged to have acted in a manner "implying some degree of moral turpitude" and the general notice pleading regime otherwise imposed by the Federal Rules.

Rule 9(b), in that it has alleged the nature of the fraud, to wit, that Stratton failed to disclose that "(1) securities transactions were being conducted with [Hirata's] funds; (2) Stratton was selling securities in Indiana without a license; and (3) Stratton was manipulating the securities market by, for example, changing closing dates for trades and setting 'market' prices for trades in advance[;]" that Hirata has alleged the manner in which the fraud was accomplished, to wit, "Stratton solicited the securities transactions by calling a representative of Hirata at Hirata's Indianapolis offices; [J.B. Oxford] processed and executed the fraudulent transactions, maintained Stratton's books, and mailed 'duplicate' account statements to addresses in Indiana[;]" that Hirata has alleged the parties involved in the fraud, to wit, "representatives of Stratton and [J.B. Oxford;]" and that Hirata has alleged the general time period when the fraud occurred, to wit, "over a period of six months in 1996." Hirata's Br. at 8. Hirata asserts that these allegations are sufficient because they "provide [J.B. Oxford] with fair notice of Hirata's claims and enough information to formulate a response." *Id.*

J.B. Oxford responds that Hirata must allege:

When Plaintiffs opened their account with Stratton;

How much money Plaintiffs deposited in that account;

Who at Stratton engaged in the alleged fraudulent activities in

connection with Plaintiffs' account;

The dates upon which the alleged fraudulent activities took place;

Who at Stratton allegedly changed the closing dates for trades and

set market prices for trades in advance;

When the alleged stock manipulation took place;

When Plaintiffs' account was closed;

The basis of Stratton's relationship with J.B. Oxford pursuant to

the Clearing Agreement.

Def.'s Memo. at 7. While we agree with Hirata that Rule 9(b) does not require the plaintiff to allege all of these facts, certain of which are only peripherally related to the alleged fraud itself, we consider Rule 9(b) to require Hirata to allege some of these particulars.

 Rule 9(b) does not require a plaintiff to plead the substantiating details of each paragraph of the complaint. *See Bankers Trust Co.*, 959 F.2d at 683; *In re Discovery Zone Sec. Litig.*, 943 F.Supp. 924, 941 (N.D.Ill.1996). However, it does require that a plaintiff at least plead the identity of the person engaging in the alleged fraudulent act or acts and when that act or acts occurred. *See Bankers Trust Co.*, 959 F.2d at 683. Hirata has failed to include these basic factual averments.

 Hirata has within its knowledge the facts necessary to inform both J.B. Oxford and the court of the time when the alleged fraudulent acts occurred. Hirata cannot expect simply to rest on its broad assertion that the fraud occurred over a period of six months in 1996. Hirata also surely knows or has records that indicate the identity of the person whose business was solicited in their Indianapolis offices, possibly even the identities of the Stratton representatives responsible for these acts. If Hirata does not possess the names of the Stratton or J.B. Oxford representatives responsible for perpetrating the alleged fraud, either through omissions in its own record keeping or lacking other sources, the stringent pleading requirements of Rule 9(b) may be relaxed. *See Katz*, 91 F.3d at 1040; *Bankers Trust Co.*, 959 F.2d at 684. From the face of Hirata's complaint, it appears that Hirata has not made any attempt to comply with Rule 9(b)'s pleading requirements.[5] Count II of Hirata's complaint simply does not comport with the pleading requirements of Rule 9(b).

This failure precludes prosecution of Count II in its present form, leaving the issue of what remedy is appropriate. We are of the opinion that, given the opportunity, Hirata could and should replead with greater partic-

---

5. While it is true that Hirata's complaint was initially filed in an Indiana court, state rules parallel the federal requirements with regard to pleading with particularity allegations of fraud. *See* Indiana Tr. P.R. 9(b).

ularity Count II and the underlying fraud. *See, e.g., Adamczyk v. Lever Bros. Co.*, 991 F.Supp. 931, 939 (N.D.Ill.1997); *Cumis Ins. Soc., Inc. v. Peters*, 983 F.Supp. 787, 793 (N.D.Ill.1997); Wright & Miller § 1300 ("An insufficient allegation of fraud or mistake is subject to the liberal amendment provisions of Rule 15."); *cf.* FED.R.CIV.P. 15(a) (stating that the court shall "freely give[ ]" a party leave to amend the party's pleading "when justice so requires."); *Arazie v. Mullane*, 2 F.3d 1456, 1464 (7th Cir.1993) (noting that it is within district court's discretion to accept or reject amended pleadings). Count II is therefore *DISMISSED* without prejudice. Should Hirata re-submit this claim, the allegations relevant to the underlying fraud must be pled with as much specificity as possible, based upon the information now available to Hirata including any additional relevant information to which it may gain access.[6]

### C. *Application of Rule 12(b)(6) to Hirata's Remaining Claim*

We now move to consider J.B. Oxford's invocation of Rule 12(b)(6) in support of dismissal of Count I. J.B. Oxford's sole argument supporting its contention that Count I warrants dismissal under Rule 12(b)(6) is that "a clearing firm, as a matter of law, is not liable for the acts or omissions of its introducing broker." *See* Def.'s Memo. at 9. Simply put, J.B. Oxford maintains that a clearing broker's typical activities do not fall within the § 23–2–1–19(d) definition of "materially aid[ ]." *See* Def.'s Memo. at 9–14; Def.'s Reply at 6. J.B. Oxford contends that its activities vis-a-vis Stratton were "only ministerial functions" for which liability cannot attach as a matter of Indiana law. *See* Def.'s Memo at 12.

Hirata asserts that J.B. Oxford has secondary liability, pursuant to Indiana Statute § 23–2–1–19(d), which makes a "broker-dealer or agent who materially aids in [a violation of the Securities Code] liable jointly and severally with and to the same extent as the person [who committed the primary violation under the Code]." § 23–2–1–19(d). Count I alleges that Stratton solicited the sale of

securities in Indiana at a time when it was not registered or·licensed to do so and that such action constitutes a violation of Indiana's Securities Code. *See* Compl. ¶¶ 10–14; § 23–2–1–8 ("It is unlawful for a person to transact business in Indiana as a broker-dealer or agent unless the person is registered under this chapter."); § 23–2–1–19(a) ("A person who offers or sells a security in violation of this chapter ... is liable to any other party to the transaction who did not knowingly participate in the violation...."). Count I asserts that J.B. Oxford is a "broker-dealer" for the purposes of § 23–2–1–19(d), as defined in § 23–2–1–1(c). J.B. Oxford's motion to dismiss Count I is premised on the definition of the phrase, "material aid," given to facilitate a primary violation of the statute.

■ It is axiomatic that a federal court, sitting in diversity, must discern the state law relevant to this dispute. *See Colip v. Clare,* 26 F.3d 712, 714 (7th Cir.1994). In so doing, we attempt to resolve issues in the same manner as we believe the Indiana Supreme Court would do. *See Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 416–17 (7th Cir.1997) (certifying question of unsettled Colorado law to Colorado Supreme Court). In the face of an unsettled issue of state law, we apply our best judgment in an effort to anticipate the way in which the highest court would rule,considering the decisions of lower courts within the state, courts of other jurisdictions, and other persuasive authorities. *See id.* at 417. This is the situation we confront here.

■ Indiana courts have not yet delineated or defined conduct amounting to "material aid," in the context of § 23–2–1–19(d). *See Kirchoff v. Selby*, 703 N.E.2d 644, 652 (Ind. 1998). We thus look to other authorities to ascertain how Indiana would likely define this concept. *Cf. Kirchoff,* 703 N.E.2d at 652 n. 7.

The only real guidance provided by the Indiana Supreme Court in *Kirchoff* is the holding that the Indiana securities law expressly imposes liability on a class of persons

---

6. Of course, should Hirata wish to assert that J.B. Oxford itself acted in a fraudulent manner, Hirata must plead that claim with particularity as well.

beyond those upon whom liability is imposed under federal securities laws. *See id.* at 652. Since the state statute imposes liability on a broader class of persons than its federal counterpart, we will sidestep case law interpreting the phrase "materially aid" as it has developed in federal securities law. This does not, however, leave us entirely without guidance. The Indiana Securities Act, including the section containing the disputed language, is an adoption of the 1956 Uniform Securities Act ("Uniform Act"); § 23–2–1–19 is based on § 410 of the Uniform Act. *See Kirchoff,* 703 N.E.2d at 649, 650. The Uniform Act, either in its 1956 version or in later versions utilizing the same relevant language, has been adopted by approximately forty states, including Indiana. *See* Douglas M. Branson, "Collateral participant liability under state securities law," 19 Pepp. L.Rev. 1027, 1038 (1992).

Our research of interpretations of other jurisdictions' codifications of § 410 of the Uniform Act leads us to two conclusions: First, those courts interpreting § 410 of the Uniform Act have not applied liability for "materially aiding" to one who merely performed "ministerial functions." *See, e.g., Robertson v. White,* 635 F.Supp. 851 (W.D.Ark.1986) (interpreting precursor to Arkansas Code § 23–42–10); *Denson v. Bear Stearns Sec. Corp.,* 682 So.2d 69, 71 (Ala. 1996) (interpreting Alabama Code § 8–6–19(b)); *Prince v. Brydon,* 307 Or. 146, 764 P.2d 1370, 1372 (1988) (interpreting Oregon Code § 59.115(3)). Second, the question of whether a party has "materially aided" in a violation of the security code is a question of fact properly to be considered once the parties have had an opportunity to adduce their evidence. *See Denson,* 682 So.2d at 71; *Hogg v. Jerry,* 299 Ark. 283, 773 S.W.2d 84, 88 (1989); *Titan Oil & Gas v. Shipley,* 257 Ark. 278, 517 S.W.2d 210, 222 (1974); *Metal Tech. Corp. v. Metal Teckniques Co.,* 74 Or. App. 297, 703 P.2d 237, 245 (1985). These two principles do not define all the contours of "material aid" under the Indiana statute, but they suffice to resolve the pending motion.

On this basis, we conclude that J.B. Oxford's Rule 12(b)(6) argument is premature. The parties' arguments distilled to their essence involve the extent to which J.B. Oxford was involved in the primary violations committed by Stratton. *Compare* Hirata's Br. at 12 ("Broker-dealers who clear trades perform far more than just ministerial duties....") *with* Def.'s Memo. at 12 ("A clearing firm ... performs only ministerial functions for the introducing broker."). Though J.B. Oxford contends that, as a matter of law, no clearing broker performing typical clearing activities can be held liable, we are of the view that the extent of J.B. Oxford's involvement in Stratton's activities is a factual determination to be resolved on the basis of the parties' evidence. At this stage in the proceedings, we do not weigh the likelihood of Hirata succeeding on the merits of its claim; our role is to test the sufficiency of the complaint. It is possible that Hirata's evidence will establish that J.B. Oxford engaged in conduct that "materially aided" in Stratton's primary violation of the Indiana Securities Code. Thus, Hirata has stated a claim against J.B. Oxford under Indiana law, and J.B. Oxford's motion to dismiss Count I for failing to state a claim is *DENIED.*

### Conclusion

For the reasons discussed above, J.B. Oxford's motion to dismiss Hirata's complaint is *GRANTED WITHOUT PREJUDICE* with respect to Count II for failing to plead the underlying fraud claim with particularity as required by Rule 9(b) and *DENIED* with respect to Count I.