**UNITED STATES of America,**
**Plaintiff,**

v.

**CLARK COUNTY INDIANA,**
**Defendant.**

No. NA 99–C–0230–B/S.

United States District Court,
S.D. Indiana,
New Albany Division.

Sept. 18, 2000.

Jeffrey L. Hunter, Asst. U.S. Attorney, Indianapolis, IN, David Katinsky, Trial Attorney Tax Div., U.S. Dept. of Justice, Washington, DC, for plaintiff.

John W. Doehrman, Jeffersonville, IN, James E. Hughes, Sommer & Barnard PC, Indianapolis, IN, Daniel E. Moore, Jeffersonville, IN, for defendant.

## ENTRY DENYING DEFENDANT'S MOTION TO DISMISS

BARKER, Chief Judge.

Plaintiff, the United States of America ("United States"), filed suit in this court requesting declaratory and injunctive relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The United States seeks to prevent Defendant, Clark County, Indiana ("Clark County"), from assessing,

imposing upon or collecting taxes with respect to buildings located at the Indiana Army Ammunition Plant ("Plant") which are owned by the United States Army and were not physically occupied by persons or businesses using the buildings for commercial purposes during 1995. Although Clark County originally levied the tax against ICI Americas, Inc. ("ICI"), the United States contends that this is an unconstitutional tax on the United States and its property and that the tax unconstitutionally discriminates against the United States and those with whom it deals. Clark County filed a motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, Clark County's motion is *DENIED.*

### Background [1]

#### A. The Plant

The Plant, located in Charlestown, Indiana, consists of 10,000 acres containing more than 1,400 buildings designed for the manufacture and storage of high explosives. *See* Compl. ¶ 8. From 1940 through 1992, the United States Army ("Army") arranged for civilian contractors to manufacture military propellants at the Plant and, in 1974, ICI became the Plant's civilian contract operator. *See id.* ¶ 9. During the 1980s, the Army began curtailing the manufacture of propellants and deactivating the Plant. In 1992, Congress empow-

ered the Army to convert unused government-owned ammunition plants to civilian use, pursuant to the Armament Retooling and Manufacturing Act of 1992, P.L. No. 102–484 ("ARMS"). *See id.* ¶ 10.

#### B. The United States' relationship with ICI

■ From 1993 until March, 1999, ICI administered the ARMS program at the Plant; pursuant to a "no cost facility use contract" and a DAAA09–92–E–0011 contract ("CTR") which provided funding to ICI for achieving specific ARMS objectives. *Id.* ¶ 11. Pursuant to these contracts, ICI was to secure commercial enterprises to utilize the buildings located on Plant grounds. *See id.* In addition, the no cost facility use contract made ICI responsible for the care, maintenance, and utilization of the Plant. *See* Brief in Support of Defendant's Motion to Dismiss ("Def.'s Br."), Ex. 1, February 1993 Contract Between ICI and the Army, at 11.[2] ICI was also given financial incentives to attract business tenants to the Plant and to sell assets "identified for disposal." *See* Compl. ¶ 14; Def.'s Br., Ex. 2, September, 1996, Modification of [CTR], Attachment 1. However, ICI was not given the authority to sell, alter, renovate, or remove any Plant building without the prior express direction of the Army, which also retained the right to enter any Plant building at any time and to evict any commercial occu-

1. The facts in this case are rather convoluted, having given rise to at least two other proceedings, one before the Indiana State Tax Board of Commissioners (and appeals thereof) and a federal collection action (also filed before us), entitled *Board of Commissioners of Clark County, Indiana v. ICI Americas, Inc.,* NA 99–19–C–B/S.

2. For purposes of a Rule 12(b)(6) motion to dismiss, the pleadings include the complaint, the answer, and any written instruments attached to the complaint as exhibits. *See, e.g., Marshall–Mosby v. Corporate Receivables, Inc.,* 194 F.3d 830, 835 (7th Cir.1999), *rev'd on other grounds,* 205 F.3d 323 (2000). However, if a document is specifically referenced by the complaint and central to the plaintiff's claim, we may consider that document as part of the pleadings if it is attached to a defen-

dant's motion attacking the sufficiency of the complaint. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993); *Hirata Corp. v. J.B. Oxford & Co.,* 193 F.R.D. 589, 592 (S.D.Ind.2000). Although the consideration of such an attachment is generally reserved for claims such as breach of contract or tortious interference of a contractual relationship, *see Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir. 1994); *Venture Assocs. Corp.,* 987 F.2d at 431; *Hirata Corp.,* 193 F.R.D. at 592, the contracts between ICI, the Army, and the subtenants or subcontractors are clearly at the heart of this declaratory action and may properly be considered part of the pleadings, even though they were submitted by Clark County and not attached to the United States' complaint.

pant at any time with sufficient notice. *See* Compl. ¶ 13.

The Army also authorized ICI to enter into a "Facilities Use Agreement" with a third-party, commercial enterprise after obtaining the Army's express approval; such authorization was required to include any alterations to be made to the building at issue. *See* Compl. ¶ 12. Under a Facilities Use Agreement, the third-party commercial enterprise obtained the right to use certain buildings and equipment at the Plant for independent commercial purposes. *See id.* ICI retained the "tenant revenues" generated from the commercial enterprises, up to an amount between $2.25 million and $3 million. Any revenues in excess of that amount were divided between ICI and the Army, pursuant to previously established percentages. *See* Compl. ¶ 14; Def.'s Br., Ex. 3, June, 1996, January, 1997, and January, 1998, Modification of [CTR].

Since 1993, certain of the Plant buildings have been occupied pursuant to an ICI administered Facilities Use Agreement, and ICI has occupied rent free a portion of one building. However, the "vast majority of the buildings at the [Plant] are vacant and have not been utilized since the cessation of military propellant manufacture ..." Compl. ¶ 15. Thus, with respect to the Plant's vacant buildings, ICI has never entered into a Facilities Use Agreement with any third party to occupy and utilize those buildings. *See id.* The United States also alleges that ICI did not generate any taxable revenue from any of the vacant buildings. *See* Compl. ¶ 14.

#### C. *Clark County's Assessment of the Buildings at the Plant*

Clark County first assessed property taxes on Plant buildings for the 1995 tax year. *See* Compl. ¶ 16. Clark County contends that "once ICI and other subtenants began using the facilities at the [Plant] for private commercial gain, [it] assessed taxes on ICI and private subtenants as the 'user' or 'possessor' of the buildings." Def.'s Br. at 4. Accordingly, property tax assessments have been issued against ICI as the "user" or "possessor" of buildings at the Plant for the 1995 tax year, but no other buildings at the Plant have ever been assessed. *See* Plaintiff's Opposition To Defendant's Motion to Dismiss ("Pl.'s Opp.") at 6.

ICI challenged the assessments of approximately 591 of the Plant buildings, a majority of which had remained vacant, before the State Board of Tax Commissioners ("Tax Board"). *See* Compl. ¶ 17. The Tax Board determined that taxes were due on these buildings for the 1995 tax year, per its Findings of Fact and Conclusions of Law ("the Final Assessment Determination") of December 17, 1998. *See id.* ICI appealed the Tax Board's Final Assessment Determination to the Indiana Tax Court, which appeal was dismissed due to ICI's failure to comply with Indiana Code § 6–1.1–15–5 (ICI failed to serve a copy of its appeal on the county assessor within 45 days of its receipt of the Final Assessment Determination). *See id.* ¶ 18. The Board of Commissioners of Clark County has filed a complaint in *Board of Commissioners of Clark County, Indiana v. ICI Americas, Inc.,* NA 99–19–CB/S, seeking to collect the unpaid taxes due and owing on the 591 buildings at the Plant. *See id.* ¶ 19.[3] This declaratory action addresses all buildings at the Plant which were vacant during the 1995 tax year, including buildings on which

---

**3.** ICI separately appealed to the Tax Board the 1995 assessment of 362 additional buildings, approximately 340 of which were vacant. *See id.* ¶ 20. The Tax Board issued its findings and conclusions in that case and an appeal is pending before the Indiana Tax Court. *See* Clark County's Objections to Consolidation at 1. In addition to the present

motion, there are also pending in this case a Motion for Summary Judgment filed by the United States, a Motion to Stay Briefing on the United States' Motion for Summary Judgment, and a Motion to Consolidate this action with the collection matter filed by the Board of Commissioners of Clark County's.

a final decision regarding taxability has not yet been entered by the Indiana Tax Court.

## Discussion

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a claim for "failure to state a claim upon which relief may be granted." *See* FED.R.CIV.P. ("RULE") 12(b)(6). When considering a motion under this rule, the Court must examine the sufficiency of the plaintiff's complaint, not the merits of the lawsuit. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520–21 (7th Cir.1990); *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 585 (7th Cir.1989), *abrogated on other grounds by Board of County Comm'rs, v. Umbehr*, 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). Dismissal is appropriate only if it appears to a certainty that the plaintiff cannot establish any set of facts which would entitle him to the relief sought. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir.1991). We accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992).

The question before us is whether the United States can properly contest issues relating to ICI's alleged leasehold interest in the vacant buildings upon which Clark County has sought to assess and collect taxes. The United States contends that it has properly alleged that no lease existed between itself and ICI and that ICI therefore had no leasehold interest upon which Clark County could legally assess and collect taxes. *See* Pl.'s Opp. at 2. The United States argues that we must allow this case to continue on its merits to allow a decision as to whether the Clark County tax was an unconstitutional tax on United States property. *See id.*

Clark County counters by asserting that "what is *not* at issue is whether ICI in fact *had* a leasehold interest in certain properties at the Ammunition Plant," based on two factors: that the factual issue of whether a leasehold interest existed has been conclusively determined against ICI in the state administrative proceedings, and that ICI alone has standing to raise that factual issue. Def.'s Br. at 6 n. 2 (emphasis in original). We understand Clark County's first argument to be that the prior ruling issued against ICI precludes the United States from re-litigating the factual issue of whether a leasehold interest existed based on principles of collateral estoppel; its second contention is that the United States does not have standing to litigate this factual issue, that only ICI has the necessary standing.

### B. Collateral Estoppel

■ The equitable doctrine of collateral estoppel, also called issue preclusion, embodies the fundamental precept of common-law adjudication that a "'right question of fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies....'" *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *see also Arizona v. California*, —— U.S. ——, 120 S.Ct. 2304, 2319, 147 L.Ed.2d 374 (2000) (quoting Restatement (Second) of Judgments § 27 at 250 (1982)) (noting that collateral estoppel attaches "'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.'"); *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 739 (7th Cir.1999) (noting that Indiana courts also apply collateral estoppel). This doctrine applies without regard to the nature of the party who is being precluded, including the United States. *See, e.g., Montana*, 440 U.S. at 164, 99 S.Ct. 970 (applying equitable estoppel to prevent the United States from litigating a Montana state court's ap-

plication of a gross receipts tax to a government contractor).

■ Due process concerns normally dictate that a stranger to a prior case cannot be bound by it, and therefore that issue preclusion cannot serve to block such a stranger from re-litigating a previously determined factual issue. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). However, this principle is not a rigid bar to application of collateral estoppel as non-parties to the first litigation may in certain circumstances also be subject to its preclusive effects. *See, e.g., Montana,* 440 U.S. at 154, 99 S.Ct. 970. A non-party who foregoes a clear opportunity to participate in a prior adjudication ordinarily is not subject to collateral estoppel; the doctrine requires that the non-party "assume[d] control" over the prior litigation to such an extent that it occurred for the non-party's benefit and at the non-party's direction. *See id.; see also Richards v. Jefferson County,* 517 U.S. 793, 799 n. 5, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) (noting that the law does not impose upon a stranger to a litigation the burden of voluntary intervention in that suit). " 'One who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own ... is as much bound ... as he would be if he had been a party to the record.' " *Montana,* 440 U.S. at 154, 99 S.Ct. 970 (quoting *Souffront v. La Compagnie Des Sucreries,* 217 U.S. 475, 486–87, 30 S.Ct. 608, 54 L.Ed. 846 (1910)).

In *Montana,* the United States subsidized and controlled the movements of a government contractor who challenged the application of a Montana state tax; it directed that the state suit be filed, reviewed and approved the complaint, paid the attorney fees and costs, directed the appeals

process within the state court system, appeared and submitted an amicus brief in the Montana Supreme Court proceedings, and directed the appeal of the Montana State Supreme Court decision to the United States Supreme Court. *See Montana,* 440 U.S. at 155, 99 S.Ct. 970. This extensive involvement in the litigation prompted the Supreme Court to rule that the United States was bound by the prior state-court determination as if it had been a litigant itself. *Cf. United States v. Cook County,* 167 F.3d 381, 387 (7th Cir.1999) (discussing *Montana* ).

■ We do not, as a matter of law, view the United States as subject to collateral estoppel in the case at bar. Without reaching the issues relating to the finality of its ruling, the Tax Board's decision with respect to the 591 buildings, which were included in the first assessment and subject to ICI's initial challenge, would appear to preclude ICI's raising the issue ab initio a second time, in our court or elsewhere. It is undeniable that the United States was not an actual party to ICI's initial proceedings before the Indiana Tax Board or ICI's appeals of the Tax Board's rulings. Absent direct participation as a named party, we apply the principles of collateral estoppel to the United States only if the facts establish that it "assumed control" of ICI's appeal of Clark County's assessment.[4]

There are no facts alleged in the complaint that would allow us to conclude that the United States had assumed such control. To the contrary, Clark County itself asserts that the United States had two years "to join the administrative proceedings or the state court proceedings, but chose not do so." Def.'s Reply in Supp. of Its Mot. to Dismiss ("Def.'s Reply") at 2. Collateral estoppel principles do not operate to prevent the United States from litigating whether a leasehold interest existed. In testing the sufficiency of the

---

4. By "non-party" or "stranger," we mean one who is not in privity with the party to the prior litigation. *See Montana,* 440 U.S. at 153 & 154 n. 5, 99 S.Ct. 970. Clark County

does not assert that United States is in privity with ICI nor does it assert that the United States has been subrogated to ICI's rights.

complaint, we accept the United States' well-pleaded facts, including that the United States and ICI did not enter into a lease for the Plant's vacant buildings, and assume that ICI did not have a leasehold interest in them.

### C. Standing

Turning to Clark County's standing argument, Clark County contends that because the tax was assessed on ICI's "leasehold estate and the appurtenances to the leasehold estate" and no tax has been assessed against the United States, the United States has no standing to contest the assessment. *See* Def.'s Br. at 6 n. 2, 12, 13. As explained above, however, we assume, for the purposes of Clark County's Rule 12(b)(6) motion, that ICI did not have a leasehold interest in the vacant buildings that are subject to this declaratory action.

■ In *United States v. Allegheny County*, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944), the Supreme Court concluded that "Government-owned property, to the full extent of the Government's interest therein, is immune from taxation, either as against the Government itself or as against one who holds it as bailee." *Allegheny County*, 322 U.S. at 189, 64 S.Ct. 908. Reserving the question of whether a private bailee could be constitutionally taxed for its "right of possession or use" of government property, the Supreme Court held that a locality's tax on government property itself, and not on the privilege of using or possessing it, was invalid, whether it was imposed upon the United States or on its bailee. *See Allegheny County*, 322 U.S. at 185–86, 64 S.Ct. 908.

■ The Supreme Court has since addressed the issue it previously explicitly reserved in *Allegheny County*, holding that a tax imposed upon a private citizen's use or possession of government property is not a tax on the Government or its property and is therefore constitutional. In *United States v. New Mexico*, 455 U.S.

720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982), the Supreme Court held that the United States' immunity from state taxes is appropriate only "when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned." *New Mexico*, 455 U.S. at 735, 102 S.Ct. 1373. It is "constitutionally irrelevant" whether the tax has an "effect" on the United States, if the Government "shoulders the entire economic burden of the levy" or if it "reimburse[s] all the contractor's expenditures." *United States v. California*, 507 U.S. 746, 753, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993) (quoting *New Mexico*, 455 U.S. at 734, 102 S.Ct. 1373). Governmental tax immunity bars only those taxes that are imposed "directly on one sovereign by the other or that discriminate against a sovereign or those with whom it deals." *Jefferson County v. Acker*, 527 U.S. 423, 436, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999) (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 811, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989)).

■ Thus, a locality may constitutionally impose a use tax on a private citizen or corporation utilizing or possessing government property in connection with the private citizen's or corporation's own commercial activities, regardless of whether those commercial activities arise out of a contractual relationship with the government. *See New Mexico*, 455 U.S. at 733, 102 S.Ct. 1373; *City of Detroit v. Murray Corp.*, 355 U.S. 489, 493, 78 S.Ct. 458, 2 L.Ed.2d 441 (1958) ("*Murray Corp.*"); *United States v. Township of Muskegon*, 355 U.S. 484, 486, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958). A state or locality may also constitutionally tax private lessees of tax exempt property (including property that is owned by the government) which is used in a business conducted for profit, even if the leasehold interest is calculated for purpose of the tax by meas-

uring the full value of the property. *See United States v. City of Detroit*, 355 U.S. 466, 469–70, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958) (*"City of Detroit"*). A state or locality may also constitutionally tax compensation received by a federal employee, whether that tax falls on income received or on a private citizen's interest in housing on federal property provided the citizen as part of his or·her compensation. *See Jefferson County*, 527 U.S. 435–36, 119 S.Ct. at 2077 (holding constitutional an occupational tax on a federal district judge's compensation); *United States v. County of Fresno*, 429 U.S. 452, 462, 97 S.Ct. ·699, 50 L.Ed.2d 683 (1977) (holding constitutional a tax on a private citizen's interest in housing on government property received as part of the private citizen's compensation).

Each of these cases, although limiting the breadth of the *County of Allegheny* 's holding, deals specifically with taxes imposed upon a private citizen's interest in property otherwise owned by the United States, whether that interest is defined by the private citizen's use of the property, possession of the property or leasehold interest in the property. As the Supreme Court stated in *County of Fresno*, "A State may ... raise revenues on the basis of property owned by the United States *as long as that property is being used by a private citizen or corporation and so long as it is the possession or use by the private citizen that is being taxed."* *County of Fresno*, 429 U.S. at 462, 97 S.Ct. 699 (emphasis added). *Allegheny County* 's core holding is still valid: a tax is unconstitutional if it is imposed on government property itself and not on a private citizen's privilege of using or possessing it, whether imposed on the government or on a bailee of the property. *See County of Fresno*, 429 U.S. at 462 n. 10, 97 S.Ct. 699 (noting that "[i]nsofar as [*Allegheny County* ] holds that a tax measured by the value of Government-owned property may never be imposed on a private party who is using it, that decision has been overruled by [*City of Detroit* ] and its companion cases.");

*Murray Corp.*, 355 U.S. at 494, 78 S.Ct. 458 (distinguishing *Allegheny County* in that the tax at issue there was a general property tax laid on government property as such and not a tax on the use or possession of the property); *City of Detroit*, 355 U.S. at 471, 78 S.Ct. 474 (distinguishing *Allegheny County* since that case involved a tax "simply and forthrightly imposed on property itself, not on the privilege of using or possessing it").

The United States contends that the facts in this case implicate *Allegheny County* 's core holding. At this juncture, on a Rule 12(b)(6) motion, we agree. For purpose of resolving this motion, we hold that the case at bar is distinguishable from each of the Supreme Court cases discussed above (handed down subsequent to *Allegheny County* ), in that the private citizen or corporation in each of those cases was found to have some taxable interest in the government property at issue, either in terms of leasing the property, possessing the property, or by otherwise using the property.

The United States has alleged that ICI had no interest in the vacant buildings which Clark County assessed and taxed, more specifically, that ICI had no leasehold interest in the property upon which Clark County could assess taxes. The complaint includes no allegations which would indicate that ICI ever took possession of these vacant buildings and no facts indicate that any of these vacant buildings was used by ICI. Any tax imposed by Clark County therefore could not have been based upon an interest in the property possessed or retained by ICI.

 Under the portion of the Supreme Court's holding in *Allegheny County* that has continuing vitality, ICI's lack of a taxable interest in the property makes the tax an impermissible tax on the United States property, even if it were nominally imposed on ICI rather than the United States. On this basis, we conclude that it is possible for the United States to present

evidence consistent with its pleadings in support of Count I's claim that the tax was an unconstitutional tax on property of the United States.

With respect to Count II, Clark County attacks the United States' position that ICI had no leasehold interest in the buildings, describing it as the "quitessential 'straw man' ... [because] ICI *did* have a leasehold interest. This disposes of the United States argument in its entirety." Def.'s Reply at 15 (emphasis in original). Because the United States will likely dispute ICI's possession of a leasehold interest in the property, we find Clark County's response inadequate.

Clark County argues that Indiana Code § 6–1.1–10–37(b) "applies evenhandedly to any and every private party that *leases* tax-exempt property ... [and] has been applied to other private entities that have *used* tax-exempt church property and tax-exempt educational property." Def.'s Reply at 15 (emphasis added). However, in the case at bar, the United States has asserted that Clark County applied the code section to a private entity that has not leased tax-exempt property nor used it in any other way. The tax may therefore have been applied in a discriminatory manner. Consequently, Count II also states a claim upon which relief may be granted.

### Conclusion

For the reasons explicated above, we hold that both Counts I and II of the United States' complaint state claims upon which relief may be granted. Clark County's motion to dismiss is therefore *DENIED*.